# CHARLESTOWN.

## HULING, BROCKERHOFF & CO. *v.* N. B. CABELL.

### September 12, 1876.

1876.
August Term.

1. An assignment for the benefit of certain of their creditors made by an Agricultural Society of the proceeds arising from an agricultural fair, then advertised to be held on their grounds in a few days thereafter, is void as against the lien of a *fieri facias* which went into the hands of the sheriff before such proceeds had been paid over to such creditors.

2. The lien of *fieri facias* never levied, attaches to all the personal property owned by the debtor at any time prior to the return day of the *fieri facias*, subject only to the exceptions specified in chapter one hundred and forty-one section one, of Code of West Virginia.

3. The lien of a *fieri facias* attaches to all *choses in action*, to which the debtor may be entitled at any time prior to the return day of the *fieri facias*, subject only to the exceptions specified in chapter one hundred and forty-seven, section two of the Code of West Virginia.

*Supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the fifth day of June, 1875, in a case therein pending, in which L. G. Huling, Henry Brockerhoff, James H. Huling, Philip M. Gallaher, and Thomas E. Rogers, doing business under the name of Huling, Brockerhoff & Co., were plaintiffs, and Napoleon B. Cabell was defendant.

The facts of the case are fully stated in the opinion of the Court.

Hon. Joseph Smith, Judge of said circuit court, presided at the hearing below.

W. H. *Hogeman,* for Huling, Brockerhoff & Co., plaintiffs in error.

*George S. Couch* and *William A. Quarrier* for Cabell *et al.* defendants in error.

GREEN, JUDGE:

Huling, Brockerhoff & Co., having a judgment against the West Virginia State Agricultural Society for $659, with interest thereon, from November 15, 1873, until paid, and $6.10 costs, rendered by the circuit court of Kanawha county, at the November term, 1873, on the first day of October, 1874, issued, and placed in the hands of the sheriff, an execution thereon, and on the same day suggested that there was a liability, by reason of the lien of said execution, on N. B. Cabell and Henry D. McFarland; and, thereupon, a summons was, on the same day, issued against each of them to answer the suggestion. This summons was returnable to the circuit court of Kanawha, on the fifteenth day of November, 1874, and was served on October 1, 1874, on both the garnishees. N. B. Cabell appeared and answered that, under what he calls an assignment to him by the West Virginia Agricultural Society, he had received, on September 30, 1874, $340.85, ten dollars of which was counterfeit, and that he had paid out $200 thereof on October 1, 1874, before the summons to answer the suggestion had been served upon him; that on October 1, 1874, he had received, under the same assignment, $289.80 more, and that after that day, and before October 7, 1874, he received, under this assignment, $424.85 more; that all of these moneys were the proceeds of an agricultural fair held under the direction of the West Virginia State Agricultural Society, upon their grounds, on the twenty-ninth and thirtieth days of September, and on the first and second days of October, 1874, and were claimed by N. B. Cabell,

to have been assigned to him by certain resolutions of the board of directors of said corporation, passed September 26, 1874, and a copy of which was that day furnished him. These resolutions were in these words: "*Resolved*, That the proceeds arising from the fair to be held on the fair grounds of the West Virginia State Agricultural Society, at Charleston, on the twenty-ninth and thirtieth of September, and first and second of October, 1874, be and they are hereby transferred and assigned to N. B. Cabell, President of the Merchants Bank, to be applied as follows:

*First.* To the payment of yearly rent of fair grounds.

*Second.* To the payment of the premiums and purses advertised for said fair.

*Third.* To the payment of the incidental expenses attending the said fair, including first, the salary due the secretary for services to date, and second, all other incidental expenses which may accrue; the residue, if any, to be divided *pro rata* in the payment of the notes of the society due to the First National Bank, and the Merchants Bank of Charleston.

"*Resolved*, On motion, the secretary was directed to furnish a copy of the above assignment, signed by the secretary, to Mr. N. B. Cabell, the assignee.

· "JAS. F. LEWIS, *Secretary.*"

When these resolutions were passed, the holding of the fair had been advertised.

Manning, Robinson & Co. filed an interpleader, also claiming the funds in the hands of N. B. Cabell. Their claim was based on an execution against the West Virginia State Agricultural Society, and on a suggestion of liability, a summons to answer which was issued November, 17, 1874, but the amount and date of this execution does not appear, for, though the record states that a copy of this execution and suggestion was filed as a part of the record, yet it has not been copied therewith. On June 5, 1875, upon the hearing, the circuit court of Kanawha county adjudged that there were liens upon the

funds in the hands of N. B. Cabell, by reason of each of said *fieri facias* and suggestions; but that these liens attached only to so much of this fund as remained in the hands of Cabell, after the payment of the sums mentioned and described in the assignment to him by the West Virginia State Agricultural Society, and it being admitted that no surplus would remain after paying the claims mentioned in said assignment, it was, therefore, considered by the court that the suggestion of Huling, Brockerhoff & Co., and the petition of Manning, Robinson & Co., be dismissed, and that the said Cabell go hence, without day, and recover against Huling, Brockhoff & Co., and said Manning, Robinson & Co., his costs, by him about this suggestion expended, including an attorney's fee of $15.

Huling, Brockerhoff & Co. tendered a bill of exceptions to this ruling of the court, which was signed, sealed, and enrolled. This bill of exceptions set forth all the facts proved, and they are stated above, so far as they are material to the proper decision of this case. Upon the petition of Huling, Brockerhoff & Co., a *supersedeas* to said judgment was awarded them by this Court.

The principal question in controversy is, whether the resolution, passed by the West Virginia State Agricultural Society, on September 26, 1874, operated as an assignment in law, or equity, of the proceeds arising from the Agricultural fair held several days afterwards, on their fair ground, and under their direction. It cannot, of course, so operate, unless the proceeds of a fair, to be held at a future time, are capable of assignment. The authorities have, I think, settled that neither *choses in action* or property can be assigned, unless they have either actual or potential existence at the time of the assignment. Property has been said to have a potential existence, when it is the natural product or expected increase of something belonging to the vendor at the time of the assignment or sale. It has been contended

1876.
August Term.

Huling, Brock-
erhoff & Co.
v.
Cabell.

that non-existing property may be the subject of assignment, but most of the decisions, relied upon to establish this proposition, are, when properly understood, consistent with the law as I have above stated it. Thus in *Gardner v. Hoeg*, 18 Pick. 168 and in *Tripp v. Brownell*, 12 Cush., 376, it was held that, "the *lay*, that is the share of the oil, which a sailor in a whaling ship receives in lieu of wages, may be assigned before the commencement of the voyage." But this ought not to be regarded as a sale of the oil, but rather as an assignment by the sailor of his claim against the owner of the ship for his share of the oil which may arise from the intended voyage. As this claim has an actual existence at the time of the assignment, there is no violation of correct principles in holding that it is assignable. So in *Brackett v. Blake*, 7 Metcalf, 335 it was held, a city officer chosen for a year, subject to removal at any time, at the will of the mayor and alderman, and whose salary is payable quarterly, may legally make an assignment of a quarter's salary before the quarter expires. In *Clark v. Adair.*, cited in Dunford and East, 343, an officer drew a bill on the agent of a regiment, payable out of the first money which should become due to him, on account of arrears or non-effective money, and Lord Mansfield held that this was a good assignment.

But in these cases, it should be observed that the officers, holding their respective offices at the time of the assignment, had then existing claims to what they assigned, and though these claims were uncertain in amount, or voidable at the pleasure of a third party, still, they were assignable. It has been, in like manner, held that a laborer for a manufacturing company, or other employer, may assign his future wages, even though his hiring be only by the day, and he be liable to be dismissed at any time, or though he works by the piece, and his wages per month vary. *Emory v. Lawrence and Trustee*, 8 Cush. 151 ; *Hartley v. Tapley*, 2 Gray 565 ; *Lannan v. Smith*, 7 Gray 150. But in all these cases,

there were existing engagements when the assignment was made, and though these engagements might be avoided or terminated at any time, or the measure of the wages was uncertain, still as the future wages arose out of existing contracts, they were regarded as having a potential existence.

A question has often been discussed, whether a crop of grain not yet sown, may be sold or assigned by the owner of land. The weight of authority seems to be that such grain, having no actual or potential existence, cannot be assigned. *Hutchinson v. Ford*, 9 Bush, 318; 15 Amer. Rep. 711; *Comstock v. Scales*, 7 Wis. 159; *Millimans v. Neher*, 20 Barb. 38; *Bank of Lansingburg v. Crary*; 1 Barb. 542. These decisions seem based upon the same principles that are laid down in *Low v. Pew*, 108 Mass. 347; 11 Amer. Repor. 357. In that case, the owners of the schooner which was about to sail on a fishing voyage, made a written agreement with a party, whereby they sold, assigned, and set over to him, all the halibut that might be caught during the voyage, at $5\frac{1}{4}$ cts. per pound, the purchaser paying in cash $1,500, when the assignment was made. The Court held this assignment void, the halibut having no actual or potential existence when the assignment was made. The same principle was followed in *Mulhall v. Quinn*, 1 Gray, 105.

In this case a laborer assigned all the claims he had, or might have, against the city of Boston, for all sums of money due, or to become due, for services in laying common sewers for six months thereafter. It appeared that the laborer had been, previous to the making of this assignment, employed by the city for particular jobs in laying common sewers, and that afterwards, during the six months, he was employed by the city for a like particular job at the same price, but when he made the assignment he was under no contract with the city; it was held that the assignment was void. The court say, "that the future earnings constituted a mere possibility, coupled with no interest; that none of the cases go so

far as to hold, that the mere possibility of being employed by the city and earning wages under that employment at a future time, is capable of being assigned." *Morton J. in Lou v. Pen,* 108, Mass. 349, thus lays down the law. " It is an elementary principle of the law of sales, that a man can not grant personal property in which he has no interest or title. To be able to sell property, he must have a vested right in it at the time of the sale. Thus it has been held, that a mortgage of goods, which the mortgagor does not own at the time the mortgage is made, though he afterwards acquire them, is void. *Jones v. Richardson,* 10 Met. 481. The same principle as to all sales of personal property, is applicable. *Rice v. Stone,* 1 Allen 566, and cases cited. *Head v. Goodwin,* 37 Maine, 181.

It is equally well settled that it is sufficient, if the seller has a potential interest in a thing sold. But a mere possibility or expectancy of acquiring property, not coupled with any interest, does not constitute a potential interest in it, within the meaning of this rule. The seller must have a present interest in the property, of which the thing sold is the product, growth, or increase. Having such interest, the right to the things sold, when it shall come into existence, is a present vested right, and the sale is valid. Thus a man may sell wool to grow upon his own sheep, but not upon the sheep of another; or the crops to grow upon his own land, but not upon land in which he has no interest. 2 Kent Com. (10 ed.) 468, (641) note a. *Jones v. Richardson,* 10 Met. 481. *Bellows v. Wells,* 36 Verm. 599. *Van-Hoozer v. Cory,* 34 Barb. 9. *Grantham v. Hawley,* Hob. 132.

The same principles have been applied by this Court to the assignment of future wages or earnings. In *Mulhall v. Quinn,* 1 Gray 105, an assignment of future wages, there being no contract of service, was held invalid. In *Hartley v. Tapley,* 2 Gray 565, it was held, that if a person be under a contract of service, he may assign his

future earnings, growing out of such contract. The distinction between the cases is, that in the former, the future earnings are a mere possibility, coupled with no interest, while in the latter, the possibility of future earnings is coupled with an interest, and the right to them, though contingent and liable to be defeated, is a vested right.

In the case at the bar, the sellers, at the time of sale, had no interest in the thing sold. There was a possibility that they might catch halibut; but it was a mere possibility and expectancy, coupled with no interest. We are of opinion that they had no actual or potential possession of, or interest in, the fish, and that the sale to the plaintiffs was void."

Applying these principles to the present case, was there any potential interest, owned by the West Virginia Agricultural Society, when they made the assignment, in the proceeds which they expected to arise from the Agricultural Fair, to be held in a few days thereafter? It seems to me clearly not. It is true they owned the grounds, upon which they expected to hold the fair, out of which they expected these proceeds to arise, and had advertised the holding of the fair in a few days; but in the case just cited, the assignor owned a schooner, which, when the assignment was made, was just about to start on a fishing voyage, in which he expected to catch halibut. The expected proceeds of this Agricultural Fair were no more assignable than were the expected proceeds of the laborer, who, when the assignment was made, anticipated that he would be employed to work on the Boston sewers, as he had been before. His expectation was probably as well founded as that of the West Virginia State Agricultural Society. But he had, when he made this assignment, no existing contract with any one out of which these expected wages might arise, and so here the West Virginia State Agricultural Society had no agreement with any one out of which the proceeds they undertook to assign, might arise. It was a mere

67

expectancy, based on no existing contract, and was, therefore, not assignable.

·The question has been discussed whether these resolutions of the Board of Directors, amounted to an assignment, and whether this attempted assignment was not fraudulent, and, whether to be valid, it ought not to have been recorded. I do not deem it necessary to consider these questions, as I hold that, the proceeds of the fair was incapable of assignment, before the fair was held.

The only remaining inquiry is, upon what *choses in action* is a *fieri facias* a lien? The Code of West Virginia of 1868, ch. 141, sec. 2, p. 671, provides that, "Every writ of *fieri facias* hereafter issued, shall, in addition to the effect which it has under ch. 140, be a lien from the time that it is delivered to a sheriff, or other officer, to be executed, upon all the personal estate of, or to, which the judgment debtor is possessed, or entitled, (although not levied on, nor capable of being levied on, under that chapter,) except in the case of a husband, or parent, such estate as may have been listed and set apart as exempt from distress and levy under the provisions of chapter 47, and except that as against an assignee of such estate for valuable consideration, or a person making a payment to a judgment debtor, the lien by virtue of this section, shall be valid only from the time that he has notice thereof."

It is obvious from the wording of this section, that personal property capable of being levied on, is bound by the issuing of a *fieri facias*, though such personal property is not levied on; the only difference is, that if levied on, the lien is good against the purchaser, though for valuable consideration without notice of the lien; but if such personal property is not levied on, the lien is not good against the purchaser of such property for valuable consideration, without notice of the lien. From the lien of a *fieri facias* created by this section, there is

1876.
August Term.

Huling, Brock-
erhoff & Co.
v.
Cabell.

in the words of this section, this exception, "that as against the purchaser of such personal estate, for valuable consideration, the lien, by virtue of this section, shall be valid only from the time he has notice thereof." As the lien of a *fieri facias*, against personal property levied upon, extends to all personal property so levied upon, which the debtor may own at any time up to the return day of the *fieri facias*; so must the lien of a *fieri facias* upon personal property not levied on, extend to all personal property acquired up to the time that the *fieri facias* is returnable, except as against a purchaser, for valuable consideration, without notice of the lien, and except such personal property as may have been listed and set apart as exempt from distress and levy, under the provisions of chapter 41 of the Code. Now as this section makes expressly the lien on *choses in action*, called in this section "personal estate not capable of being levied upon," co-extensive with the lien on personal property "not levied on," I conclude, that the lien of *fieri facias* attaches to all *choses in action* of the debtor in existence up to the return day of the *fieri facias*, except "that as against a person making a payment to a judgment debtor, the lien shall be valid only from the time he has notice thereof."

It follows, therefore, that the lien of the *fi fa* issued by Huling, Brockerhoff & Co., on October 1, 1874, returnable to the first Monday in November, 1874, was a lien on all *choses in action*, and personal property owned by the West Virginia State Agricultural Society up to the first Monday in November, 1874, including all the proceeds of the Agricultural Fair, which closed October 2, 1874, excepting only the $200, paid over by N. B. Cabell to Major Carr, on October 1, 1874. before he had notice of this lien. These proceeds which went into the hands of N. B. Cabell, exclusive of this $200, and of the $10 counterfeit note, amounted to $855.60, a sum exceeding the execution, principal, interest and costs of Huling, Brockerhoff & Co. Had Manning, Robinson &

Co., appealed, this Court might have ordered the payment to them, of the small residue of the funds in the hands of N. B. Cabell, after the payment in full of the execution of Huling, Brockerhoff & Co. But they not having appealed, no such order can be made.

The judgment of the circuit court must be reversed, except so far as it dismisses the petition of Manning, Robinson & Co., but without prejudice to their rights, and the appellant must recover of the appellee, N. B. Cabell, their costs in this Court expended, to be paid out of the funds in his hands of The West Virginia State Agricultural Society.

And the court proceeding, to give such judgment as the circuit court ought to have rendered, it is considered that Huling, Brockerhoff & Co., do recover of N. B. Cabell, $726.60, the amount of the principal of their *fi fa*, and interest to June 5, 1875, and costs with interest on $720.50, part thereof, from June 5, 1875 till paid, and their cost about this proceeding in the circuit court expended, which, when paid, shall be a full satisfaction of their *fi fa* against the West Virginia State Agricultural Society, and shall also be a credit on the indebtedness of said N. B. Cabell by reason of his having received said funds of the West Virginia State Agricultural Society.

The other Judges concurred.

JUDGMENT REVERSED.