# CHARLESTON.

WIANT *et al. v.* HAYS, COMMISSIONER, *et al.*

Submitted June 20, 1893.—Decided December 9, 1893.

1. DELINQUENT AND FORFEITED LANDS—TITLE—JUDGMENT—LIEN.

    The title to land forfeited for non-entry on the assessor's land-books, by section 7, p. 90, Acts 1869 (Code 1868, c. 31, s. 34) vested in the state upon the forfeiture, by the mere force of the statute, and without judicial or other proceeding declaring the forfeiture, and therefore a judgment against the former owner, rendered after such forfeiture, is no lien on such land.

2. DELINQUENT AND FORFEITED LANDS—SALE—EXCESS—FIERI FACIAS—LIEN—PERSONAL PROPERTY—FRAUDULENT CONVEYANCE.

    The right of the former owner to the excess of the proceeds of the sale of such forfeited land, after payment of taxes, interest, and costs, accorded to him by section 5, art. XIII of the constitution, is property in the former owner—personal property—which he may sell, and which is liable to the lien of a *fieri facias* against him, and such property as that, if a transfer be made of it in fraud of creditors, they may maintain a suit in equity to avoid the transfer.

3. SALE—PERSONAL PROPERTY.

    Personal property, to be the subject of sale, must have an existence, but a potential existence is sufficient.

4. FIERI FACIAS—LIEN—PURCHASER.

    Under section 2, c. 141, Code, a writ of *fieri facias* is a lien upon personal property, not of such nature as to be leviable, owned by the debtor before its return-day, if docketed as required in said section, against a purchaser for value, without notice other than the constructive notice arising from such docketing; but, if not so docketed, the lien will not affect such purchaser, if he be a *bona fide* purchaser for value, and without notice of the writ. It makes no difference, so far as the protection of the purchaser is concerned, whether he purchased before or after the return-day of the writ.

5. DELINQUENT AND FORFEITED LANDS—SALE.

    A proceeding under chapter 105 of the Code of 1887 by a commissioner of school lands for the sale of forfeited lands is a judi-

cial proceeding—a suit, not simply an administrative proceeding. The court may in it allow one claiming right to the surplus proceeds of its sale to file his petition asking such surplus to be paid to him.

Linn & Withers and N. M. Bennett for appellants cited 9 W. Va. 522; 16 W. Va. 355; Code, c. 105, s. 17; 28 W. Va. 820; Code, c. 141, s. 2; 1st Bouvier (15th Edition) page 605, title, "Estate."

R. F. Fleming for appellees cited Const. Art. XIII, § 5; Acts of 1872–3, ch. 134; Acts of 1882, ch. 95, § 13 and 14; Code of 1887, c. 105, s. 13 and 14; Acts of 1891, ch. 94, § 16; 24 W. Va. 561; Id. 583; 27 W. Va. 652; Acts of 1869, ch. 125, § 7; Acts of 1872–3, ch. 117, § 39; Code of 1891, c. 31, s. 39; Acts of 1879, ch. 73, § 10; Code, c. 29, s. 10; 17 S. E. Rep. 318.

Brannon, Judge :

A tract of land, the property of Peregrine Hays, was forfeited for non-entry on the assessor's land books of Gilmer county for more than five years from and including the year 1870; and under a decree in a proceeding instituted by the commissioner of school lands made February 5, 1891, the land was sold as forfeited and purchased by Kidd, and the proceeds of the sale after paying taxes and costs left a surplus. The sale took place on October 1, 1891, and it was confirmed by decree of October 8, 1891. By a writing dated June 1, 1891, Peregrine Hays assigned to Kidd any excess that might remain from its sale. Peregrine Hays and Kidd before confirmation of sale united in filing a petition in the Circuit Court of Gilmer, wherein said proceeding was going on, setting up said assignment, and asking that said surplus be paid to Kidd, pursuant to the assignment.

William T. Wiant, and R. G. Linn, administrator of Robert Linn, and others, filed in said proceeding a petition against Hays and others, setting up that Linn, administrator, had obtained a decree for money against Hays in February, 1886, and that Wiant had recovered a judgment for money against Hays, July 2, 1887, which were docketed in the judgment-lien docket, and that various writs

of *fieri fucius* had been issued on said decree and judgment, which were returned unsatisfied ; and that certain ones of them had been entered in the execution-lien docket— Linn's first docketed on February 13, 1891, and Wiant's earliest, docketed June 4, 1891 ; and they claimed in their petition, that under said judgments and executions they were entitled to said surplus.   The petition of said Wiant and Linn and others was on demurrer dismissed, and the said surplus fund was decreed to Kidd, and said Wiant, Linn, administrator, and other petitioners appeal.

To whom should such surplus fund go—to Kidd under his assignment from Hayes, or to Wiant and Linn, administrator, under their said claims as creditors of Hays ? By the omission of the land from the tax-books its forfeiture became complete some time in 1875.   By such forfeiture the whole title went from Hays and vested in the state by force of the statute (Acts 1869, p. 90, § 7; Code 1868, c. 31, § 34) without any legal proceeding or sale.   The act operates as a legislative grant, and vests title in the state. *Levasser* v. *Washburn*, 11 Gratt. 572.   As was said in *McClure* v. *Maitland*, 24 W. Va. 561 and *McClure* v. *Mauperture*, 29 W. Va. 633, (2 S. E. Rep. 761) after the forfeiture became complete, the former owner had no more right or title in the land than if he had never owned it. Therefore, as before Wiant's and Linn's judgments Hays had ceased to own the land, their judgments did not become liens on this land, as they were not rendered until in the years 1886 and 1887.

What interest, then, had Hays as to the land after such forfeiture ?   This is a material question, because under the arguments in the case we must answer whether Hays had such interest as could be assigned to Kidd, or such as could be subject to the writs of *fieri facias* upon Wiant's and Linn's judgment and decree.

The constitution (article XIII, § 5) as also the statute, provides that the former owner of forfeited lands shall be entitled to receive the excess of the sum, for which the land may be sold, over taxes and costs, if his claim be filed within two years after the sale.   This surely does not vest any estate that is real estate in the former owner, for the statute

vests the whole estate in the state; and in *McClure* v. *Mait-
land*, 24 W. Va. 561, it is held that this provision does not
confer upon the former owner any interest in the land.
But he has something that is property, dependent upon a
sale and the existence of an excess for its fruition.

In *McClure* v. *Maitland* it is held, that the grant to him
of the excess is a gratuity—an act of grace in the state.
This language was used to support the position taken in
that case, that under the then existing act relative to pro-
ceedings for the sale of forfeited lands the owner had no
right to demand to be a party and was not a proper party;
but it was surely not intended to mean that the right under
the constitution and act to the excess, should it ever come
to exist, was not a property-right. It is a vested right, con-
tingent, so far as its vesting in possession and enjoyment is
concerned, upon the happening of the event of a sale and
excess—a right inchoate until sale, and then consummated,
if it leave a surplus. It has potentiality, as contrasted with
a mere naked possibility. There is the land out of which
money may issue, and that land is required by law to be
sold and will be sold, and to that money the law gives the
former owner a right. It is not a mere expectancy, like
that of a child as to the estate of the living father, or the
sale of the catch of fish on a future voyage.

The fact, that perchance the land may never be sold and
may never produce a surplus, does not render the former
owner's right a mere possibility legally speaking, but it is
a probability. The facts, that the land exists and will be
sold under fixed law commanding it, and that the right of the
owner to the surplus is connected with it, and that the
surplus issues out of it, give that right a potential present
existence. That which is in every sense non-existent—a
non-entity—can not be sold, is not property; but it need
not have in every sense a perfect, tangible existence, to be
regarded in law as capable of ownership. So it have a
potential existence, it is enough. A man may not sell the
fruit from trees, or wool or lambs from sheep, which he has
not; but he may do so, if he then owns the trees or sheep.
Their ownership gives potential existence to the fruit and
wool and lambs, though as yet the trees have not blossomed,

or the wool grown, or the ewes become pregnant. "A mere contingent possibility, not coupled with an interest, is not the subject of sale, as all the wool one shall ever have, or the sheep which a lessee has covenanted to leave at the end of an existing term. If rights are vested, or possibilities are distinctly connected with interest or property, they may be sold." 1 Pars. Cont. 523.

What is a devise of land to an executor to be sold—part of proceeds to one, part to another? Personal property. So here. The cases are similar in nature. The law ought to go as far as possible to deem that property which is necessary to pay creditors. We find it in old and late books, as laid down in Benj. Sales, p. 80, § 78, that "things not yet existing, which may be sold, are said to have a potential existence; that is, things which are the natural product or expected increase of something already belonging to the vendor." Here the land did not belong to Hays, but that land existed, and he had a conceded right to certain money to issue from it. It would be unreasonable to say that a man whose land, worth many thousands of dollars, forfeited for a few dollars of taxes, has no such interest in the excess, as that, when it comes into real existence as money, it can not be subjected to pay his debts. It might be said with some force that while the land is, as regards the legal title, vested in the state yet the state holds in trust for the former owner as to the residue, and that his interest is land; but perhaps that view is untenable. I shall without further elaboration refer to the following authorities for the discussion of this somewhat abstruse subject : *Huling* v. *Cabell,* 9 W. Va. 522, and many citations there ; *Bank* v. *Kimberlands,* 16 W. Va. 555 ; Benj. Sales, p. 80, § 78. 1 Pars. Cont. 523 ; Tied. Sales, § 52; 2 Kent. Comm. 468 (641) note a ; 2 Bl. Comm. 297 ; *Wheeler* v. *Wheeler,* 74 Am. Dec. 421 ; *Fonville* v. *Casey,* 4 Am. Dec. 559, and note.

It is argued that it is no property—merely a gratuity from the state. So it is as regards Hays and the state ; but when once the gift has vested, like any other property given it is the property of Hays, the donee. It is argued that it is, like pension to a soldier, exempt from creditors. There is no analogy. The pension is exempt by provision of the act granting it, but there is no exemption here made

by the constitution. So we hold that this right of Hays touching the land is property; not real, but personal—a chose in action. Therefore it could pass under the assignment of Hays to Kidd.

But what of Wiant's and Linn's executions, docketed as execution-liens? Code, c. 141, s. 2, says that every writ of *fieri facias* shall, in addition to the effect which it has under chapter 140 of this Code, be a lien from the time it is delivered to an officer to be executed upon all the personal estate, of which the judgment-debtor is possessed, or to which he is entitled, and upon all which he may acquire on or before the return-day thereof, although not levied on nor capable of being levied on under that chapter. And then follows a provision that a purchaser shall not be affected by such lien unless the execution be docketed, as in said section provided; and the statute then provides, that, if so docketed, it shall be an abiding and continuing lien against a purchaser and have preference over him.

The executions constituted liens on the property right of Hays, the execution-debtor, arising from said land, as it was in existence when the executions were delivered to officers for execution. *Huling* v. *Cabell*, 9 W. Va. 522. Linn's *fi. fa.*, which issued October 11, 1890, and was docketed February 13, 1891, has preference over Kidd's rights under his assignment. I find no execution of Wiant's docketed before June 4, 1891, and, that being after Kidd's assignment, Kidd has preference over Wiant, provided he be a purchaser for valuable consideration *bona fide* and without notice of Wiant's execution. Though the assignment was made after Wiant's execution, was in the officer's hands, and before its return-day, yet, the property being a chose not leviable, Kidd has preference over Wiant, if Kidd be such a *bona fide* purchaser without notice. The lien of a *fi. fa.* upon a chose is not under chapter 140, but under chapter 141, s. 2; and, as this section excepts such purchaser, it is no difference that, when he purchased, the execution was in the officer's hands, and the return-day had not passed. Opinion in *Evans* v. *Greenhow*, 15 Gratt. 162.

Some change was made in 1882 in chapter 141. As our Code now is, chapter 140 makes the writ of *fieri facias* a lien

on leviable property, but not at all on property not leviable. Chapter 141 does this. Under chapter 140 the lien on leviable property begins when the *fieri facias* goes into the officer's hands, and ends with its return-day, unless levied, in which case it continues to bind the property levied upon after its return-day. If not levied, it would not bind the property in the hands of one purchasing it after the return-day under chapter 140, whether he had notice of the execution or not. I say under chapter 140. But chapter 141 makes the *fieri facias* a lien on property not leviable, and continues, if it does not create, the lien under chapter 140 on leviable property after its return-day, if the *fieri facias* be docketed, as required by section 2. The lien given by section 2, c. 141, as to property not leviable, like a chose in action, begins when it goes into the hands of the officer, but does not end with the return-day.

As to leviable property, one could not purchase it during the life of the execution, even without notice of it, but he could purchase unleviable property without notice, either before or after its return-day, unless it be docketed, as section 2, c. 141, saves him from the lien it creates on unleviable property; but chapter 140 does not save him from the lien by it created as to leviable property. In other words, if the subject be unleviable property, like a chose, whether purchased within or after the lifetime of the *fieri facias*, and it be docketed, as required in section 2, c. 141, the lien is good against a purchaser, though he be a *bona fide* purchaser for value and without notice of the *fieri facias* otherwise than by the docketing; but, if not docketed, it is not good against such *bona fide* purchaser for value without notice. As to leviable property, if purchased before the return-day of the writ, its lien, though not docketed, is good, even against a *bona fide* purchaser for value without notice of it, because of chapter 140; but, if purchased after the return-day of the writ of *fieri facias*, the lien is not good against a *bona fide* purchaser for value, unless so docketed, or unless he have notice of the writ; but, if either so docketed, or the purchaser have such notice, it is good against him.

The petition charged that Kidd's assignment was made with intent to defraud petitioners. This, I assume, was regarded by the court as immaterial, and as no ground to save the petition from demurrer, on the theory that the right assigned was not property in Hays, to which a creditor could set up a claim, and could not be the subject of a fraudulent alienation. Were this so, the position would be correct, as a creditor can not say he has been defrauded by an assignment of anything that is not property of his debtor to which he can resort for satisfaction; but, as the thing assigned is to be regarded property liable to creditors, it follows that fraudulent transfer could be assailed. Equity, under the statute avoiding fraudulent transfers, will reclaim and subject any species of the debtor's property, prospective or contingent—all kinds of property, real, personal, legal, or equitable, vested, reversionary, or contingent estate—subject to debts. It will subject property sometimes where the legal process can not reach it. Equity is here not technical, but asks whether it is a thing of substantial value of the debtor, which in the facility and flexibility of its remedial procedure it can reach. Wait, Fraud. Conv. §§ 24, 25 ; Bump. Fraud. Conv. § 238. Certainly, equity would not allow the fraudulent transfer, if such it was, of hundreds of dollars, actual money in the hands of the court, coming from a sale of the land, having no longer a merely potential, but now an actual, existence, on any such theory that it was not property liable to creditors. If capable of assignment, it would, so far as its existence as property is concerned, be liable to creditors.

But it is contended that the proceeding in the name of the commissioner of school-lands in the Circuit Court is not a suit with parties, but only an administrative proceeding by the state *ex parte*, to sell its own land—only a method of converting its land into money—and this contention is rested on *McClure* v. *Maitland*, 24 W. Va. 561, and, not being a suit, Wiant could not file his petition in the proceeding. The question in that case was whether the former owner was a proper party to the proceeding to sell, whether he could complain of error in the proceeding and maintain an appeal. It was held that the pro-

ceeding was not judicial in the sense that it involved litigation between parties.

But this proposition, as applied to this case, can have no force, for two reasons : First. The act, under which *McClure* v. *Maitland*, was had, made no provisions for parties. The legislature, desiring to make the proceeding as effectual as possible, and pass good title, and protect the purchaser's title, as under ordinary decrees, by chapter 95, Acts 1882 (Code 1887, c. 105) greatly changed the law touching the sale of forfeited lands for the benefit of the school-fund, directing that the commissioner file a petition which must contain certain matters of allegation, naming the owners of the land by it sought to be sold, directing process to issue against the owners and all unknown persons having or claiming the land, and that it be served on them, or in default of service that a publication be made, and that the case be referred to a commissioner to report certain important matters, and that all the parties claimant appear before him, and that exceptions might be filed to it, and that a hearing take place on the report and exceptions, and a decree of sale be entered, if the land be found liable, and the sale reported to court for its action. There is an express provision that, if there be exceptions to the report, "the same proceedings shall be had in the case as if it were a suit in chancery."

Now, why, with parties plaintiff and defendant, process, pleading, hearing between the parties, decree *etc.*, it is not, if not technically a chancery suit, yet a suit, I can not see ; a suit under a special statute, it is true, but none the less a suit. So, substantially, it was regarded in *Hays* v. *Camden's Heirs, supra,* p. 109 (18 S. E. Rep. 461). Proceedings at rules take place as in ordinary and common-law suits. In some places it is called a "suit." But I know that it is said by those holding the other view that the question is not to be tested by the circumstances, such as I have alluded to, the presence of pleading, process, hearing *etc.*, but it must be tested by the nature of the proceeding ; that is, that it is only an administrative process by the state, through an officer and court, to realize money on its own property. But to this I reply that though the state might make the

87

proceeding such, and did in its acts up to 1882, yet by its act in 1882 it changed the proceeding from one *ex parte* to one *inter partes*, and clothed the proceeding with all the habiliments of a suit; and still it did not proceed against the land, taking the fact of forfeiture as a concession, and simply at once sell the land, but it subjected its right and title under the supposed forfeiture to question and investigation under the law through a suit, called in all interested adversely to its claim, and gave them leave to contest its right, and made its claim the subject of litigation.

Second. Suppose it is not a suit, as between the commissioner and the defendant. Still claimants to the residue might file their petition in the proceeding to obtain that residue, because the money being in the court, they could in no other way get it, save by asking the court for it by petition; and I understand that always where money is in the hands of a court in any proceeding, which is claimed by parties and on grounds outside that proceeding by attachment, execution, assignment or otherwise, a petition may and must be filed. How, otherwise, can the right to it be asserted? And, as incidental, there can be parties defendant to the petition. It would be a petition as to the proceeding, seeking the fund, but not litigating anything involved between the parties to the proceeding; while, as to the parties interested in the fund, it would be a bill—a suit. It must be filed in the cause, because it seeks a fund in custody of the law, and asks an order in that cause for leave to withdraw the fund; but in no other respect does it concern or become part of it. This petition can be called a "bill," as between its plaintiffs and defendants. It is a bill in equity to render effective the lien of a *fi. fa.* on a fund not leviable, which is a common function of equity, and also to annul a transfer of it, and settle right to it; and it is only filed in the proceeding, because there the fund is. It is no litigation within the other proceeding.

Said decree so far as it sustains the demurrer of Kidd to Wiant's and Linn's petition, and dismisses it, and gives the surplus to Kidd, is reversed, and said demurrer is overruled, and the cause remanded for further proper proceedings.