# WHEELING.

STEVENSON *v*. KYLE.

42 229
e 51 48

Submitted January 18, 1896—Decided June 8, 1896.

1. PRINCIPAL AND AGENT—SET OFF—AGENT'S DEBT.
    If an agent sell property of his principal, and take an order on a third person in his own name, the order is the principal's property; and, as it is an assignment, the principal may compel the third person to pay it, he having a fund in his hands; and the third person can not set off a debt of the agent due him against the order, or, even with the agent's consent, apply it on such debt, though the third person knew nothing of the agency.

2. ASSIGNMENT—ORDER ON FUND.
    An order on the whole or part of a fund is an assignment of the whole or part of such fund.

3. ASSIGNMENT—ORDER ON FUND.
    To warrant an order on a fund, it must have either a real or potential existence in the hands of the drawee of the order.

4. ASSIGNMENT—OFFICIAL SALARY—PUBLIC POLICY.

> An assignment by an assessor or other public officer of his salary or compensation for future service, or continuing or yet incomplete service, not yet payable, is contrary to public policy, and invalid.

CAMPBELL & HOLT for plaintiff in error.

SIMMS & ENSLOW, JOHN S. MARCUM and HERBERT FITZPATRICK for defendent in error, cited 29 W. Va. 462; 15 R. I. 595; 107 Mass. 37; 130 Mass. 587; 13 Ark. 13; 15 Gray, 267; 3 Pa. St. 346; 56 Iowa, 597; 2 H. & M. 603; 17 Am. & Eng. Enc. Law, 228; Browne, Stat. Fraud. § 174; 2 Rob. Prac. 153; 2 Pars. Cont. *26.

BRANNON, JUDGE:

Bolin, as agent for Stevenson, sold a horse of Stevenson to Hayslip, taking in payment an order from Hayslip on Kyle. Before taking the order, Bolin asked Kyle if he would accept the order, and was informed that he would. At that time, Bolin owed Kyle a note for a larger amount than the order. Before the order was drawn, Hayslip also asked Kyle if he would accept an order drawn by him in favor of Bolin for the horse, and Kyle told him that he would, as Bolin owed him, and he could thus utilize the order. Neither Hayslip nor Kyle knew that the horse was not Bolin's, or of any interest of Stevenson in the transaction. Bolin assigned and delivered the order to Stevenson. When Bolin informed Kyle that he had the order, Kyle credited its amount on Bolin's note to him, but never had possession of the order. When Stevenson presented the order to Kyle for payment, Kyle told him he had applied it on Bolin's note, and refused to pay to Stevenson; and Stevenson sued before a justice, and, on appeal to the circuit court, there were a verdict of a jury and judgment in favor of Kyle, and Stevenson brings the case here.

It is clear that when Bolin, as agent for Stevenson, sold his horse to Hayslip, and for its price took the order in his own name, that order was Stevenson's, though the legal title to the order vested in Bolin, because of the relation of principal and agent; and it falls under that ordinary rule that where one, especially in trust relation, buys property

with the funds of another, a trust results for him whose money acquired it? giving him the real ownership, and this no matter whether property be turned into notes or other securities, or *vice versa;* and it will be followed through any transmutations as long as it can be traced, unless the right of a *bona fide* holder for value intervene in those cases where his rights call for his protection. Story, Ag. § 229; Mechem, Ag. § 780; *Pumphrey* v. *Brown,* 5 W. Va. 107; *Hamilton* v. *Steel,* 22 W. Va. 348; *Bank* v. *King,* 98 Am. Dec. 215. Where the subject is money current or negotiable paper going into the hands of one for value, without notice, it is different. Mechem, Ag. § 786; Story, Ag. § 228. Where once the character of trust is stamped upon the property, no subsequent dealing with it by the agent or trustee can remove its stamp as between him and the principal or beneficiary. *Heiskell* v. *Powell,* 23 W. Va. 717. And, where an agent acquires personal property with funds of his principal, it may be followed into the hands of third persons, though innocent, having no notice of the right of the principal, who purchase for value, as that third person can get no better title than has he from whom the third person derives title. Mechem, Ag. § 784; Story, Ag. § 229. This doctrine avails at law. 2 Story, Eq. Jur. §§ 1258, 1259. The agent can not apply it to pay his debt. If he does, the principal may follow and recover it. The agent can not apply it to his debt, nor release a debt of his principal. Mechem, Ag. §§ 789, 790. Therefore this order was Stevenson's, and Kyle could not, even with Bolin's klowledge or consent, apply it on Bolin's note. But it was Kyle's own act, and, when he credited the amount of the order, Bolin had not delivered it to Kyle, but either Bolin or Stevenson had it. He did not buy the order, but, on his own motion, credited its amount on Bolin's note to himself. The order given by Hayslip to Bolin was an assignment for so much of any indebtedness of Kyle to Hayslip. *Bank* v. *Kimberlands,* 16 W. Va. 555. So this order gave Stevenson an assignment of so much of any fund that might be in Kyle's hand belonging to Hayslip, and Kyle could not effectually apply it to Bolin's debt to him.

But next the question comes up: Was there such a fund

in Kyle's hands of Hayslip as was capable of being assigned by the order ? The thing assigned must have a real or potential existence. *Wiant* v. *Hays*, 38 W. Va. 681, 685 (18 S. E. 807); *Field* v. *Mayor*, etc., 57 Am. Dec. 440. Who, if anybody, owed Hayslip ? That corporation called the county court of Cabell county—not Kyle, the sheriff; for that court was to pay Hayslip, who was assessor. It was to allow or disallow his compensation, and issue a draft on the sheriff to pay, but never until that draft issued would Kyle, the sheriff, be under any obligation to pay, and then not as an individual, but officially, as sheriff and *ex officio* county treasurer. It does not appear that the county court had even allowed Hayslip's salary, or issued a draft for it on this sheriff. Therefore, there was not yet in his hands anything which we could say had either a real or potential existence. As the assessor was in the employ of the public, we may say that his demand upon the county had such an existence that an order to the county court from Hayslip would have passed it; but we can not say the same of an order on Kyle, when it does not appear there was a cent in his hands. And there is another reason against the efficacy of that order as an assignment of Hayslip's salary as an assessor, and that is that the salary or compensation of a public officer is not assignable, because this would permit the public service to be prejudiced and undermined by the transfer to strangers of funds appropriated to salaries. If it were allowed, the assignee, by notice to the government or its sub-agents, would be entitled to receive pay directly, and take the place of their assignors in respect to the emoluments, leaving the duties yet to be performed as a barren charge to be borne by the assignors. Needy officers, under present pressure, would assign their future pay, and then neglect the public service. They would assign away the bread from their mouths. So that the behests of the public service and of the officers both concur in branding assignments of compensation for future service as contrary to public policy, as detracting from efficiency. And is the government or the county court or other subagency of the state government to be embroiled in conflicting claims to salary or compensation ? Where would its complications

end ?  If such an assignment is tolerated, we must tolerate it for fractions, and compel the county treasurer to pay part to one, parts to others.  Of course, this would never do.  Public policy and the orderly dispatch of public business would forbid this.  We do not know whether the order was for past or future service of the assessor, but from its date of 14th July, I take it that it was for then continuing service, and may as well be said to apply to future as to past service; and I understand that no assignment of quarterly, annual, or other compensation, payable at stated intervals, can be made in the middle of the quarter or year for services continuing, and not then complete.  As only past service is assignable, the plaintiff must show that the service had been performed at the date of the assignment. The allowance is annual to an assessor, and some of the service was not yet performed.  I do not see clearly why public policy should not prohibit the assignment of pay for past as well as future service, but the books do draw this distinction.  Mechem, Pub. Off. 874; *Bliss* v. *Lawrence,* 17 Am. Rep. 273; *Bank* v. *Wilson* (N. Y. App.) 25 N. E. 854; *Field* v. *Chipley,* 42 Am. Rep. 215; *Robertson* v. *Robinson,* 39 Am. Rep. 17; Story, Eq. Jur. § 1040d; *Schloss* v. *Hewlett,* 81 Ala. 266 1 (South. 263); note to *Skipper* v. *Stokes,* 94 Am. Dec. 650; *Bangs* v. *Dunn,* 66 Cal. 72, (4 Pac. 963).  So, I conclude, both for the reason that there was in Kyle's hand no fund, and also because its assignment was invalid, that the order in question vested nothing on which recovery could be had.

If it be said that before Bolin took the order he asked Kyle if it would be good, and Kyle said "Yes," it is to be said that Kyle understood that his debtor, Bolin, who owed Kyle much more than the order, was to be its payee, and it was not hinted to Kyle that Stevenson was to be its beneficiary.  He had a reason for running the risk that Hayslip would get an order from the county court on him, and that was that he might get so much as the order called for on Bolin's note to him; and he stated to Hayslip when asked by Hayslip if he might draw the order that Bolin owed him and he could thus utilize the order; but he had no such reason for agreeing to pay the order to another who did

not owe him. His assent to the order would estop him from allowing it to Bolin, but would not deprive him of right to protest it against Stevenson, for he was guilty of no conduct which would estop him from denying payment to Stevenson.

Affirmed.