## In re RANDOLPH.

(District Court, N. D. West Virginia. April 27, 1911.)

**1. BANKRUPTCY (§ 267\*)—PERSONAL PROPERTY—LIENS.**

Where a horse, which came into the possession of the bankrupt and was sold by the trustee, was included in a deed of trust executed September 23, 1907, duly acknowledged and recorded, the beneficiary under the deed was entitled to a preference lien on the proceeds of the sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 267.\*]

**2. BANKRUPTCY (§ 196\*)—EXECUTION LIENS—INJUNCTION—EFFECT.**

Code W. Va. 1899, c. 50, § 139 (Code 1906, § 2090), provides that from the time an execution comes into the hands of an officer to be executed it shall operate as a lien on all the personal property of the judgment debtor liable to be seized under it, and chapter 141, § 3 (section 4173), provides that the lien acquired under section 2 (section 4172) shall cease whenever the right of the judgment creditor to levy the writ of fieri facias under which the lien arises, or to levy a new execution on his judgment, ceases or is suspended by a forthcoming bond being given or forfeited, or by an appeal, or otherwise. *Held* that, where an execution was seasonably issued and levied, an injunction sued out to restrain a sale thereunder by strangers to the execution, from whom only a nominal bond to indemnify for damages and costs was required, did not destroy the lien by virtue of section 4173, and that, on the injunction being subsequently dissolved, the execution creditors were entitled to the benefit of the lien in determining their right of priority in the distribution of the judgment debtor's assets in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 196.\*]

**3. BANKRUPTCY (§ 355\*)—TRUST DEEDS—RIGHTS OF SURETY.**

Where trust deeds were executed by a bankrupt to secure the beneficiaries as sureties, the beneficiaries were not entitled to be paid personally the amounts of the debts for which they were sureties out of the bankrupt's estate, but were only entitled to have such debts paid to the creditors out of the proceeds of the property included in the deeds, and to a release of their liability as sureties.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 355.\*]

**4. BANKRUPTCY (§ 345\*)—CLAIMS—PRIORITY—TRUST DEED—RECORD—EXECUTION.**

Where a trust deed was not admitted to record until after liens had been acquired under executions, and the execution creditors had no knowledge of the deed at the time their liens attached, such liens will be given priority in distribution of the grantor's estate in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 345.\*]

In the matter of bankruptcy proceedings of Rufus H. Randolph. On petition to review an order of the referee determining the order of priorities and preferences with reference to certain claims. Reversed and remanded.

Davis & Davis, for trust creditors.

Charles G. Coffman, for execution creditors.

E. G. Smith, for Wesley Steele.

DAYTON, District Judge. Petition in bankruptcy was filed in this case on May 20, 1909. The usual reference to a referee was made, and the case is now before me to review his action in ascertaining and fixing the order of priorities and preferences given by him

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to certain claims and refused as to others. The claims allowed preference are:

[1] (1) In favor of Jesse F. Randolph for a balance of $59.24, which the referee held to be a first lien upon the proceeds derived from the sale of a "bay horse named Prince." The facts touching this claim are that the bankrupt on September 23, 1907, executed to claimant, Jesse F. Randolph, his note for $125, and, to secure the same, on the same day executed a deed of trust on "one bay horse about fourteen years old known as the Innis horse, one bay horse this day bought of J. F. Randolph and one pony this day bought of Clete Randolph." This deed of trust was regularly executed, acknowledged, and admitted to record on September 25, 1907. Payment has been made upon the $125 until the balance due is $59.24, with interest. There is no question but what the "bay horse Prince" was one of the horses included in the deed of trust, that he was taken possession of by the trustee in bankruptcy and sold. This claim was properly allowed as a special lien upon the proceeds arising from the sale of this horse.

(2) A claim aggregating $311.07 as of February 28, 1909, in favor of D. S. & T. B. Smith, based upon a justice's judgment rendered November 27, 1908, upon which execution issued December 4, 1908, was received by a constable the same day at 4:20 p. m., levied January 14, 1909, returned not satisfied February 3, 1909, because of the service upon the constable of an injunctive writ issuing from the circuit court of Harrison county, W. Va., inhibiting sale of the property levied upon. The referee allowed this claim as a first lien upon the whole of the bankrupt's assets after payment of the special lien out of the proceeds of sale of the horse Prince, an exemption allowance to the bankrupt, and a labor lien to one Fox.

(3) A claim to Harrison Bates aggregating $73.12 as of said February 28, 1909, based upon a justice's judgment rendered December 12, 1908, upon which execution issued December 12, 1908, was received by a constable the same day at 5:20 p. m. levied January 14, 1909, and returned not satisfied February 3, 1909, by reason of the same injunction order.

(4) A claim of Homer Swiger aggregating $63.47 as of same date, based upon a justice's judgment rendered on the same day, December 12, 1908, received and levied on the same day and hour as the Bates one, and returned unsatisfied for the same reason. These two claims were held by the referee to be of equal priority, second in order after payment of the three claims above set forth.

(5) A claim of W. H. Nesbitt aggregating $46.05, based upon a justice's judgment, rendered December 18, 1908, upon which execution issued December 28, 1908, was levied January 14, 1909, and returned unsatisfied by reason of the same injunction order. This claim was allowed third priority by the referee after the three claims to the bankrupt, to Fox, and to J. F. Randolph, as above set forth.

The referee refused to allow as preferred claims:

(1) A claim of S. C. Bond and D. G. Davis for $500 upon which preference was claimed, based upon the following facts: On February 1, 1908, the bankrupt executed a deed of trust to Ernest Ran-

dolph, trustee, whereby he conveyed a number of horses and other personal property to secure and indemnify said S. C. Bond and D. G. Davis as sureties upon a $1,000 note, executed by the bankrupt to Clete Randolph payable in six months. No provision was made in the deed to secure future renewals of this note. This deed of trust was acknowledged on "the ———— day of February, 1908," and admitted to record on the 13th day of February, 1908. The evidence shows that some of the horses conveyed by this trust deed died or were sold or disposed of and did not pass into the hands of the bankrupt's trustee, that part of the debt was paid, and that on August 1, 1908, a note for $500 was executed to the Merchant's & Producer's Bank of Salem, W. Va., by the bankrupt and claimants Davis and Bond as sureties for the residue of this trust debt, which is still due and payable to this bank, and has not been paid by these sureties.

(2) A claim of $347.89 of S. C. Bond upon which preference was claimed, based upon the following facts: On August 5, 1908, the bankrupt executed a note to the First National Bank of Salem, W. Va., for $1,020. The claimant Bond became surety upon this note, and on the same day took from "R. H. Randolph and Company" a deed of trust upon "eighteen head of horses, eight sets of double wagon harness, eight road wagons and one boiler truck, all with chains and fixtures complete and including all the property of that description belonging to the party of the first part" to indemnify and secure himself as such surety. This deed of trust was signed, "R. H. Randolph, President," and acknowledgment was taken as of "this ———— day of August, 1908," from the bankrupt in the form provided to be used where a corporation acknowledges a writing by and through its president. This deed of trust was not admitted to record until January 12, 1909.

The objection urged against the allowance as preferred of the claims of D. S. & T. B. Smith, Harrison Bates, Homer Swiger, and W. H. Nesbitt are substantially the same, and may be considered together. It is insisted it is not shown (a) what property levied upon by claimants' executions was actually owned by the bankrupt on the day the petition in bankruptcy was filed; (b) that no executions were at that time in the hands of the officer, and therefore no liens existed upon the bankrupt's personal property at that date in favor of these judgment creditors of his; (c) that collection of executions theretofore issued and levied had been enjoined and by reason of such injunction had been returned by the officer unsatisfied.

[2] These four executions were issued in December, 1908, and from the date of issue became liens upon all the personal property of the debtor under section 2090 of the Code 1906 (Code 1899, c. 50, § 139) of this state, which provides:

"From the time the execution came into the hands of such officer to be executed, it shall operate as a lien on all the personal property of the judgment debtor, liable to be seized under it."

The executions were returnable in 60 days, but before this time their collection out of the property levied upon was enjoined. This injunction was granted February 2, 1909, and was not dissolved until the 31st day of May following. In the meantime, on the 20th day of

May, the debtor had been adjudged a bankrupt. The question practically resolves itself into determining what legal effect this injunction had upon these execution liens. Did it destroy them, or only suspend them, and did they revive after the dissolution of the injunction? This question is a very perplexing one, and there is no direct authority in point in West Virginia to which I have been cited by counsel or have been able to find. In 17 Cyc. 1197, it is said: "By the general rule an injunction releases the levy and the lien created by it"—citing the three cases from Kentucky of Mallory v. Dauber, 83 Ky. 239; Keith v. Wilson, 3 Metc. 201; Lockridge v. Biggerstaff, 2 Duv. 281, 87 Am. Dec. 498, contra; Lamorere v. Cox, 32 La. Ann. 246. Also:

"The reason is that it would ruin both debtor and creditor if the sheriff should be required to hold the goods to the termination of an injunction bill in chancery. The same reason it is obvious would equally apply if the injunction be sued out at the instance of a third person." Telford v. Cox, 15 Lea (Tenn.) 298, 299.

"When an officer returns an execution levied and stopped or stayed by injunction or supersedeas, the return imports a cessation of the levy and a release of the property." Ela v. Welch, 9 Wis. 395, 400.

If the defendant has given a forthcoming bond the issue of an injunction against the enforcement of the execution excuses him for not delivering the property levied on, and this without forfeiting his bond. Hull v. Bloss, 27 W. Va. 654. See, also, Newlin v. Murray, 63 N. C. 566, where it is held that the fact that before the return of the process the injunction by consent is dissolved can make no change in the rule. And this is based upon the assumption that the injunction bond after dissolution stands as security for the debt enjoined, and subsequent execution creditors are entitled to sell the property and receive the proceeds. In accord with this would seem to be the statutory provisions of this state which require an execution debtor seeking to enjoin to execute bond with security sufficient to pay the debt, interest, costs, and damages and to indemnify the sureties upon any forthcoming bond that may have been given for the delivery of the property levied upon.

And it is still further insisted by counsel for the petitioners seeking revision that the question is settled by statute sections 2 and 3, c. 141 (Code W. Va. 1906, §§ 4172 and 4173), the latter reading as follows:

"3. The lien acquired under the preceding section shall cease whenever the right of the judgment creditor to levy the writ of fieri facias, under which the said lien arises, or to levy a new execution on his judgment, ceases or is suspended by a forthcoming bond being given and forfeited, or by an appeal or otherwise."

This contention is based upon the assumption that the words "or otherwise" fairly include a suspension of the execution by injunction. This section 3 of the statute, taken bodily from the Virginia Code of 1849, except this word "otherwise" has been substituted for the words "other legal process," has been applied, but not construed, in the following cases: Puryear v. Taylor, 12 Grat. (Va.) 401; Evans v. Greenhow, 15 Grat. (Va.) 153; Charron v. Boswell, 18 Grat. (Va.) 216; Trevillian's Ex'rs v. Guerrant's Ex'rs, 31 Grat. (Va.) 525; Frayser's Adm'r v. Railway Co., 81 Va. 388; Hicks v. Roanoke Brick Co., 94

Va. 741, 27 S. E. 596; Boisseau v. Bass, Adm'r, 100 Va. 207, 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956; Spang v. Robinson, 24 W. Va. 327. In none of these cases, however, was its application made to suspensions by injunction. In Werdenbaugh v. Reed, 20 W. Va. 588, it is discussed and held to apply where the right to sue out execution on the judgment or to revive it by scire facias is barred by the statute of limitation.

It would seem clear that if an execution debtor himself should resort to an injunction staying his creditor's right to enforce his execution, giving bond to secure the debt, costs, and damages, it would be clearly within the scope of this statute, as much so as if he took an appeal to the judgment on which the execution issued, or gave a bond for the forthcoming of the property upon which the execution had been levied, but does this statute refer to proceedings other than those between the parties themselves? How about an injunction sued out, not by the execution debtor, but by a claimant of the specific property levied upon, or a part thereof, which may not exceed in value but a small part of the whole debt, and may be but a small portion of the debtor's property that could have been levied upon? In this connection it is well to remember that under section 2 of this chapter 141 of the Code, and by the cases above cited, it is well settled that by the issuance of an execution a creditor acquires a lien "upon all the personal estate of which the judgment debtor is possessed, or to which he is entitled, and upon all which he may acquire on or before the return day thereof, although not levied on nor capable of being levied on," and that this lien thus acquired continues in this state and Virginia after the return of the execution, and ordinarily until the debt is either paid or the judgment is barred by limitation. Huling v. Cabell, 9 W. Va. 522, 27 Am. Rep. 562; Wiant v. Hayes, 38 W. Va. 681, 18 S. E. 807, 23 L. R. A. 82; Charron v. Boswell, 18 Grat. (Va.) 216. Might not very grave and serious injustice be done a large execution creditor by allowing this lien on the debtor's whole property to be destroyed by reason of the suing out of an injunction based upon adverse claim to a small part of such property, actually levied upon, by a third party? It would seem so, and a junior execution creditor might in given circumstances secure the suing out of just such an injunction in order to get out of the way the lien of the creditor prior to his own.

Turning to the decisions of other states, we find the law as to this question very unsettled. As shown by authorities heretofore cited, a number seem to hold that an injunction operates as a release. Others only as a suspension of the lien. Miller v. Estill, 8 Yerg. (Tenn.) 452; Anderson v. Tydings, 8 Md. 427, 63 Am. Dec. 708; Pettingill v. Moss, 3 Minn. 222 (Gil. 151), 74 Am. Dec. 747. And still others make its operation dependent upon the character of the bond required. Conway v. Jett, 3 Yerg. (Tenn.) 481, 24 Am. Dec. 590, where Green, J., says:

"Were it not for the security the law has provided for the creditor, whose execution may be enjoined, it would be extremely unreasonable that he should lose his lien on account of an injunction, when he was guilty of no fault or negligence himself."

See, also, Mitchell v. Anderson, 1 Hill (S. C.) 69, 26 Am. Dec. 158. Freeman in his work on Executions (volume 2, pp. 270, 271, § 271a [3d Ed.] says:

"We think the more logical view of this question is that, as an injunction operates solely upon the person of the party enjoined, its effect does not extend to the judgment or lien which that person has; that such judgment or lien continues in legal existence, notwithstanding the temporary restraint on its owner; and that, when the restraint is removed by the dissolution of the injunction, the judgment, and all liens derived thereunder, may be enforced as though the restraint had never been imposed."

Spelling, in his work on Injunctions, takes the same view (volume 1, § 178), saying:

"And where property has been seized and is about to be sold under process, and the sale is suspended by an injunction, the lien is not released; and the property still remains in legal custody pending the execution."

High takes the same position. 1 High on Injunctions (4th Ed.) p. 149, § 127. So, also, Black in his work on Judgments (volume 1 [1st Ed.] § 253). Finally, in Bartlett v. Gayle, 6 Ala. 305, 41 Am. Dec. 52, a further distinction is drawn between an injunction sued out at the instance of the execution debtor and one procured by a stranger. It is there held:

"Where an execution sale is enjoined at the suit of a stranger to the judgment, the injunction bond given by him does not destroy the judgment lien. It operates as a security for damages that may accrue by delaying the sale."

And this ruling was made by this court that had heretofore held that the suing out of an injunction by the execution debtor would release the lien. Mansony v. Bank, 4 Ala. 735.

In this case here the injunction was sued out by Davis and Bond, strangers to the execution, from whom only a nominal bond to indemnify for costs and damages was required, and they are the same parties who are now seeking to destroy these execution liens by reason of their own act of obtaining such injunction.

In view of all these authorities and the facts involved, I am driven to the conclusion that this section 3 of chapter 141 was not intended to release execution liens enjoined by strangers thereto, where bond for costs and damages alone was required and given. I am the more convinced of this because of the great injustice of its operation if it was allowed such construction as illustrated by this and similar cases and the wide open door it would leave for sharp practice and unfair advantage to be taken.

I am further led to this conclusion by the fact that West Virginia and Virginia have gone so much farther than some other states in perpetuating the liens of these executions until substantially the judgments were paid or barred by limitation on all personal property, whether capable of being levied on or not. It surely could not have been the purpose of the Legislature that such a broad, comprehensive, and enduring lien should be swept away by reason of an injunction sued out by a stranger, claiming that he had title to some items of debtor's property levied upon. I find, therefore, that there was no

error in the referee's ruling that these execution liens existed and were to be decreed for as such.

[3] To the ruling of the referee rejecting the trust debts of Bond and Davis and of Bond, as secured claims because of defects in acknowledgments, failure of dates, and changes in the form and amounts of the debts secured, I am compelled to dissent. These trust deeds were executed as such to secure Bond and Davis and S. C. Bond as sureties simply, and they are entitled to said security as sureties until the debts are paid. They are not entitled to be paid personally the amounts of these debts, but to have them decreed and paid out of the proceeds of the property included in the several trust deeds to the parties to whom they are owing to the release of their liability as sureties.

[4] The second deed of trust securing S. C. Bond alone, however, was not admitted to record until January 12, 1909, after the execution liens we have been considering attached, and no knowledge of its existence on the part of the execution creditors is shown. It must therefore be allowed only as a lien subsequent to theirs. The Bond and Davis trust debt was recorded before these execution liens attached, and must be decreed as having priority over them.

For this reason, the decree of the referee must be reversed, and he directed to decree the fund as herein set forth.