# CHARLESTON.

## McClure *v.* Mauperture.

Submitted January 25, 1887.—Decided April 2, 1887.

| 29 | 633 |
| 30 | 74 |
| 31 | 640 |
| 29 | 633 |
| 38 | 683 |
| 29 | 633 |
| 40 | 55 |
| 29 | 633 |
| 45 | 426 |
| 29/64 | 633/575 |

1. Parties—Appeal—School-Fund—Sale of Forfeited Lands—Commissioner of School-Lands.

In proceedings by the commissioner of school-lands under chap. 134 of acts of 1872-3 for the sale of forfeited lands for the benefit of the school-fund, the former owner of such lands or other persons claiming title thereto having no rights to be affected and no interest in the proceedings are not entitled to be made parties in the Circuit Court; and if inadvertently they be made parties in that court, that fact will not give any right to appeal to this Court.

2. Parties—Sale of Forfeited Lands—Title—Jurisdiction.

Such a proceeding was never designed to settle the title to land between opposing claimants; and if they be improperly made defendants in such proceeding, the Circuit Court has no jurisdiction in such a case to adjudge, which of such claimants has the better title to the land so as to bind any of such improper parties by such adjudication in any controversy, which they may thereafter have, involving the question, who has the better title to the land.

Statement of the case by Green, Judge:

On the 21st of April, 1881, William B. McClure, commissioner of school-lands of Wyoming county, filed a petition in the Circuit Court of that county to subject to sale for the benefit of the " school fund " that portion lying in Wyoming county of a tract of 500,000 acres of land, 300,000 acres of which were forfeited in the name of A. D. Mauperture for non-payment of taxes for the years 1874, 1875 and 1877, and 200,000 acres, the residue thereof, in the name of R. E. Randall for the non-payment of taxes for the year 1870. The deeds filed with this petition indicated, that Randall had or claimed title to three undivided fourth parts of this tract of 500,000 acres; that both the above parcels were sold for the non-payment of taxes and were purchased by the State of West Virginia; that the said State thus became the owner of the 500,000 acres, part of which was in Logan county, and the residue in Wyoming county; that the 200,000 acres

80

were so purchased in September, 1871, and the 300,000 acres on the 23d of March, 1875 ; that both of these parcels of land had become wholly forfeited and irredeemable and were then subject to sale for the taxes, damages and interest thereon for the benefit of the " school-fund. " It is further stated in the petition, that Black, Suydam, Reid and The Pittsburg National Bank of Commerce apparently had interest in this tract of land, and the deeds showing such interest were filed with the petition ; that such interest was derived from Robert Morris, who had many years ago obtained a patent for this land ; that there is estimated to be 365,000 acres of the land in Wyoming county, which is covered by Morris's said patent ; and that deeds showing that A. D. Mauperture's heirs had an interest in the land were filed. The petition asks, that all these parties be made defendants and all others having any interest in the land, and that they show cause, why the land lying in Wyoming county should not be sold for the use and benefit of the " school-fund " in satisfaction of the taxes, interest and damages ; and asks for general relief.

All of these defendants were proceeded against by order of publication. The Circuit Court of Wyoming, none of the defendants having appeared, on the 19th of July, 1881, decreed, directing the said commissioner of school-lands to have the said lands laid off in sections not exceeding 640 acres and proceed to sell the same in the manner prescribed by the law, but not to sell the lands of any parties living within the boundaries of the tract of land to be sold, whose titles are protected by the constitution and the laws of the State, but to report their claims to the next term. He accordingly sold six parcels of the land varying in size from 640 acres to 30 acres, for an aggregate of $742.04 and made report thereof of date November 4, 1881.

A. D. Mauperture by counsel filed six exceptions to this report, one of which was, because the land sold at grossly inadequate price. At the November term of said court said Randall appeared representing himself to be the trustee of A. D. Mauperture's heirs and as such to have an interest in the land and to have a title superior to all others. He admitted the forfeiture of the land and asked to be permitted

to redeem it.    He filed a portion of his title-papers and said
that he would file the others; and time was given him till
the next term to redeem the land.    The exceptions to the
report of sale were not acted upon; and the cause was
referred to a commissioner to ascertain and report the
amount of taxes, damages and interest and the costs of this
proceeding.    The costs and interest from 1839 to 1860 at 12
per cent. amounted to $191,141.37, and at 6 per cent. to $145,-
906.34.    But he reports, that in his judgment the proper
amount should be at 12 per cent. from the formation of the
State and charging only when the land-tax was probably not
paid.    The taxes due on the 200,000 would be $77,254.72 and
on the 300,000 acres $44,892.23.    The costs of the proceedings
were $202.50.    This report was excepted to by Randall; and
on April 11th, 1882, The Pittsburg National Bank of Com-
merce filed its petition and asked to redeem 300,000 acres
calling it three fourths of the 500,000 acres, if a forfeiture had
occurred, but protesting, that no forfeiture of this land or of
any part of it had occurred, and averring, that the greater
part of the 500,000 acres lay in Logan county, where it had
been put on the assessor's books and taxed, and the taxes
paid; and that it could not be forfeited by being improperly
put on the books of Wyoming county and improperly as-
sessed in the name of A. D. Mauperture.    The said bank
asks, that the sales, which had been made but not con-
firmed, be set aside.

On July 11th, 1882, Randall was permitted to file an an-
swer to this petition of the bank, and also to amend his own
petition.    In his answer or amended petition he sets up a
different claim to the land from that set out in his first peti-
tion and claims it as trustee for the creditors of James
Swann.    He traces his title to an act of the Legislature in
1838 vesting title to this land in John Peter Dumas as trus-
tee of the creditors of James Swann, and exhibits his substi-
tution as trustee.    The titles of these two claimants seem to
have in them as links decrees of the Circuit Court of Ka-
nawha county and the Circuit Court of Logan county, re-
spectively.    These titles are complicated, and, as this Court
has no jurisdiction in the case, I deem it unnecessary to state
them.    The decree permitting this new claim of Randall as

trustee to be set up referred the cause to a commissioner to report on various matters designed to enable the court to dispose of the cause but unnecessary to be stated.

In response to these directions the commissioner reported, that of this tract of land 17,000 acres were in Wyoming county, West Virginia,—47,000 acres in McDowell county,—and 33,000 acres in Logan county, in all 97,000 acres in West Virginia, and that the residue of the 500,000 acres was in Pike county, Kentucky, and in Buchanan county, Virginia. Of these 97,000 acres about 35,311 acres were held by junior patentees, whose titles are protected by the constitution and laws of the State. The commissioner's report shows, that the taxes on this land in Logan county were pretty regularly paid; but that for the taxes of 1879 it was returned delinquent and sold and bought for the State, the purchase money being $903.32, which with interest at 12 *per cent. per annum* amounted to $1,224.58. The commissioner also reports, that he has good reason to believe, that this has been paid to the commissioner of school-funds of Logan county; but that he cannot report it as so.  He reports, that the land in Logan county charged as 100,000 acres was sold for taxes in the name of the Pittsburg National Bank of Commerce in 1881, the amount of taxes being $2,338.20, and was redeemed by said bank;—that the amount of taxes on this land for 1882 not paid in Logan county was $475.00.  This report was excepted to by Randall, so far as it undertook to state the quantity of land in each county and State.

On the 10th of April, 1883, the cause was heard, and said bank was permitted to file additional title papers to support its claim ; and the exceptions to both reports were sustained and the decree proceeds as follows:

"And now their cause came on to be heard upon the report and supplemented report and petition filed herein and exhibited therewith, upon the amended petition of R. E. Randall in the nature of an answer to the petition of the Pittsburg National Bank of Commerce, upon the petition of the Pittsburg National Bank of Commerce, and the exhibits filed with each of said petitions, and upon the other papers and evidence in this cause and was argued by counsel. Upon

consideration of all which, the Court is of opinion that at the time of the forfeiture of the land mentioned in this cause, or any part thereof to the State for the non-payment of taxes for the failure to have the same placed upon the land books, or any part thereof, and at the time the title thereto or to any part thereof vested in the State for any of said causes, Robert E. Randall, trustee of the Swan estate, had the title thereto superior to all other claimants and now has the right either as creditor of A. D. Mauperture or those claiming under him, or as owner of the same, or of a portion of said tract, and as owner of the whole, or part thereof, and as a creditor of A. D. Mauperture, having a lien thereon, to redeem and pay the taxes upon the whole of said tract of 500,000 acres originally granted to Robert Morris, assignee of Wilson Cary Nicholas, on the 23d day of June, 1795, and that the title of said Randall, trustee as aforesaid, at the time of said forfeiture, was superior to that of the Pittsburg National Bank of Commerce or other claimant of said land; and it being agreed and admitted in open court that the whole amount of taxes, costs and interest due upon said tract is $8,000.00 and the commissioner of school lands aforesaid agreeing to and accepting that amount in payment in full of all taxes, costs, interest and damages up to and including the year 1883. And it further appearing that said Robert E. Randall, trustee as aforesaid, has paid to the plaintiff this day in open court all taxes, damages, costs, and interest heretofore unpaid thereon and amounting to the sum of $8,000.00, it is therefore adjudged, ordered and decreed that the payment aforesaid operates as a release and exoneration of all former taxes on said land and that no sale thereof shall be made. It is further ordered that the plaintiff pay said sum of $8,000.00 into the treasury of the State, less ten per cent. commission thereon, which is hereby allowed him, after paying the costs of this proceeding, and that he make report thereof as required by law. But nothing in this decree shall in anywise affect or impair the rights of the junior claimants or occupants within the boundaries of said tract of land whose title or claims are protected by the constitution and laws of this State, and it is ordered that the clerk of this court certify a copy of this order to the

auditor, and also certify under the direction of said Randall or his attorney, a copy of this order to the assessor of the proper assessment districts for taxation."

From this decree The Pittsburg National Bank of Commerce has taken an appeal.

*H. K. Shumate and J. H. Ferguson* for appellant.

No appearance for appellee.

Green, Judge :

The proceedings in this case were instituted under art. XIII of the constitution of 1872 and our statute-law passed to carry this article into effect. I will quote that part of the constitution and the law, under which those proceedings were conducted. Sections 4 and 5 of Art. XIII provide as follows :

"4. All lands in this State heretofore or hereafter for any cause forfeited or treated as forfeited or purchased by either the State of Virginia or this State and become irredeemable, not redeemed, released, transferred or otherwise disposed of, the title whereto shall remain in this State, till such sale, as is hereinafter mentioned, be made, shall by proceedings in the Circuit Court in the county in which the lands or a part thereof are situated, be sold to the highest bidder."

"5. The former owner of any such land shall be entitled to receive the excess of the sum, for which the land may be sold, over the taxes charged and chargeable thereon since the formation of the State, with interest at the rate of ten *per cent. per annum* and the costs of the proceedings, if his claim be filed in the Circuit Court, that decrees the sale, within two years thereafter."

These two sections of the constitution are incorporated in the 134th chapter of the Acts of 1872–3, which after providing for the appointment of a commissioner to sell the lands and make report thereof proceeds in the 5th section : "and the Court shall confirm the report, unless it be excepted to and competent evidence offered to show, that it should be set aside." By the 6th section it is made the duty of the prosecuting attorney to represent the interests of the State in all matters relating to such sale and proceedings ;

and section 12 is the same as section 5 of art. XIII of the constitution quoted above. Section 13 is as follows :

"13. Any such person may within the time aforesaid file his petition in the said Circuit Court stating his title to such lands accompanied with the evidences of his title; and upon full and satisfactory proof, that at the time the title to said lands vested in the State, he had a good and valid title thereto, legal or equitable, superior to any other claimant thereof, such court shall order the excess mentioned in the next preceding section to be paid to him; and upon a properly certified copy of such order being presented to the auditor, he shall draw his warrant on the treasury in favor of such owner or his personal representative for such excess. At any time before the sale of any such land as hereinbefore mentioned such former owner or any creditor of such former owner of such land having a lien thereon may pay into court by and with the consent of the court all costs, taxes and interest due at the time, as provided for in section 12 of this chapter, and have an order made on the order book of such court describing the amount paid in, as well as the character of his claim to said land, which order so made shall operate as a release of all former taxes on said land, and no sale thereof shall be made; *provided*, that such payment shall in no way affect or impair the title to any portion of such land transferred to and invested in any person, as provided in section three of article thirteen of the Constitution."

The case of *McLure* v. *Maitland*, 24 W. Va. 561, was a proceeding under these same constitutional and statutory provisions. In that case Commissioner McClure, as did the commissioner in this case, made unnecessarily and improperly all persons parties, who, when the land had vested in the State, were interested in the land, which in that case was sold for taxes and purchased by the State, and which had not been redeemed within a year thereafter, as the law authorized. Process was issued accordingly in that case, as in this, and was executed against the defendant, as in this, by order of publication. Proceedings were had similar to those in this case till after a sale of several parcels of the land, which was, as in this case, surveyed off in small lots not exceeding 640 acres, as required by the statute.

In that case the sales were confirmed by the court, the exceptions filed by the owner having been overruled. In the case before us the sales were not confirmed. In that case as in this, when the commissioner's report of sale was made, the defendant appeared and excepted thereto. He also filed afterwards a petition asking, that, as he was a non-resident and had not been served with the process, the decrees and proceedings entered in the case might be re-opened. He also filed an answer; but neither he nor any one claimed that the taxes, for which the land was forfeited, had been paid; nor did he set up any claim to the surplus proceeds of the sale under the law above quoted. After his exceptions were overruled, and the sales confirmed, Maitland appealed to this Court assigning various insufficiencies, defects and irregularities in the orders and proceeding, under and by which the sales were made and confirmed; and it was insisted by the appellees, that as former owner of the land he had no such interest in the subject-matter of these proceedings, as entitled him to appeal; that he was not legally a party to the proceedings and had no *locum standi* in court;—that the land had been forfeited and had become irredeemable, and the title was thereby vested absolutely in the State;—that this proceeding was simply a means provided by law for the conversion of lands of the State into money for the benefit of the school-fund; that it is a proceeding neither *in personam* against the former owner nor *in rem* against the land but merely a proceeding to sell the property of the State, the State acting through its courts and officers;—that it could not be called either a suit or a controversy, but was simply and solely a means provided by the State to dispose of lands of which it was the absolute and exclusive owner.

These were substantially the views adopted by the court after an elaborate review not only of our statute-law and constitution but also of the cases both Virginian and West Virginian based on similar statutes. It is true, these cases were none of them on appeals from such proceedings. It would seem, that until the case of *McClure* v. *Maitland* no one appeared to imagine, that an appeal would lie from such a proceeding. And when we consider what an immense number of such proceedings must have been taken, the fact, that

no appeal had ever been taken, is strong evidence of an almost universal legal opinion, that no appeal would lie from such proceeding. Such being obviously regarded as necessarily the law under the statute 1837-8, which was similar to our present statute, on February 13, 1844, the Legislature of Virginia passed an act, whereby appeals were granted, and such proceedings were so modified as to make them proceedings in chancery. Our statute and constitution like the statutes of Virginia of 1837 not merely create a lien for the taxes on delinquent lands but effect by their own force and vigor an absolute forfeiture of such lands and without any legal proceedings vest the title perfectly in the State. And even before the adoption of our constitution, which, we have seen, provides expressly for this, acts so operating have been held constitutional. (*Staats* v. *Board*, 10 Gratt. 400; *Wild* v. *Serpell*, Id. 405; *Levasser* v. *Washburn*, 11 Gratt. 572; *Usher* v. *Pride*, 15 Gratt. 190; *Smith* v. *Sharp*, 17 W. Va. 221; *Twiggs* v. *Chevallie*, 4 W. Va. 463.)

In such a case the former owner of the land has no more interest in it, than one, who never owned it or heard of it. The statute accordingly makes no provision for making him a party to such proceedings. The proceeding is clearly neither *in rem* nor *in personam*. This whole subject was so elaborately discussed in *McClure* v. *Maitland*, that I deem it unnecessary to consider it further. Indeed to my mind it seems so clear, that under the language used in our constitution and statute these proceedings are not judicial in the sense of involving litigation between contesting parties but are in their character administrative, being simply a mode in which the State sells its own land, and that the former owner or claimants of the land have no interest in the proceedings and should not be made parties and can not appeal, that, except for the deep interest felt by the community, I should hardly have felt justified in dwelling so long on the subject. The decision in *McClure* v. *Maitland* was followed in *Auvil* v. *Iaeger*, 24 W. Va. 583. The opinion delivered in that case concludes as follows:

" The fact, that the appellants under a misapprehension of the law were summoned before the Circuit Court and permitted to be heard in the cause, in which they had no

interest or rights, and to which the law did not authorize them to be made parties, could not legally make them parties or entitle them to appeal to this Court for the correction of any supposed errors committed by the Circuit Court. Having no rights nor interests involved they could not be prejudiced by any such errors and therefore could not complain or appeal from them. "

In this case the appellant, The Pittsburg National Bank of Commerce, has taken this appeal, because it supposes itself injured by the decree of the 10th of April, 1883, because in it among other things the court expresses the opinion, that "at the time this land or any part of it vested in the State, Robert E. Randall, trustee of the Swan estate, had the title thereto superior to all other claimants and now has the right to redeem and pay the taxes upon the whole of said tract of 500,000 acres originally granted to Robert Morris, assignee of Wilson Carey Nicholas, on the 23d of June, 1795, and that the title of said Randall, trustee, as aforesaid, at the time of said forfeiture was superior to that of The Pittsburg National Bank of Commerce or any other claimant of said land." The appellant not having been properly a party to the proceeding, nor Randall in a proper sense, the fact, that they were erroneously made parties and got into an irregular wrangle, it may be called, not controversy, could in no manner prejudice the rights of either of them to the land or any part of it. When Randall proposed to pay all the taxes charged or chargeable on this land or what would have been charged or chargeable thereon since the formation of the State with twelve *per cent. per annum* interest thereon and the costs of the proceeding upon being released and exonerated from all former taxes and upon the sale of the land under the proceeding being abandoned, and the commissioner of school lands representing the State having accepted the proposal, and the amount to be paid being agreed to be $8,000.00, when a decree was entered accordingly, neither the appellant nor any other person can complain thereof. The appellant was in precisely the same situation after the entry of this decree as before. If it had a good title to any part of this land before the entry of the decree, and the title had not vested in the State as its abso-

lute property by a failure to have it put on the commissioner's books for taxation or by reason of its having been returned delinquent and sold for taxes and bought by the State, it had just as good a title immediately after the entry of the decree. The declaration of the Court in the decree, that the title of Randall was superior to that of The Pittsburg National Bank of Commerce or of any other claimant is not an adjudication of the title binding on the said bank any more than it is binding on any claimant who was not made a party.

These proceedings were not intended to settle the title to land, and when they are ended, the title of all original claimants remains just what it was, when the proceedings commenced. If the land did not belong to the State by forfeiture or otherwise, when these proceedings were instituted, a sale of it made under a decree of the court could confer no title on the purchaser. But if the title was by forfeiture or otherwise absolutely in the State, and the proceeding terminated as in this case with one claiming to have been the former owner of the land paying into court with its consent all costs, taxes and interest due at the time, calculated as the law directs, and an order being made releasing all former taxes on said land and ordering, that no sale thereof be made, this could not affect the title of any other claimant to the land, whether he was improperly made a party to the proceedings or not. It would only operate on the title of the State, probably so far as it was derived from the person, who paid up the costs, taxes and interest aforesaid, and would release such title to such person; but I do not suppose, that such a decree would operate to transfer to such person even the title of the State, so far as it was derived from any other claimant of the land; but such other claimant would, it seems to me, have a right to offer to the court, as did the former person claiming to be the owner, all costs, taxes and interest due, at the time the offer might be made, calculated as prescribed by statute; and thereupon a decree in his favor would be made stating the amount paid as well as the character of his claim, which order would operate as a release to him of all former taxes on the land. And, it seems to me, the person claiming thus to be owner would

perhaps by such a decree have transferred to him the State's title, so far and only so far as it was derived from him by forfeiture, failure to pay taxes or in any other manner. So that the right and title of these two claimants would stand just where they respectively did, when the State acquired title from either of them. The State would have gotten its taxes from each of the claimants; but that is always the case, when there are two or more conflicting claims, which neither party is willing to surrender or forfeit.

But if in these crude views I am in error, and the effect of such a decree, as was made in this case and has been appealed from is to surrender to the person declared by the court to have had a good title thereto superior to that of any other claimant, when the title to the land vested in the State, not only the title, which the State derived from him but the State's title, no matter whence derived, still no claimant of the land, even though improperly made a party to the proceedings, can complain of such decree. For, if his title had not been vested in the State as the result of his failure to pay taxes or for some other reason, he could still recover the land in an action of ejectment as well after such proceeding concluding with such a decree as before. And if his title had absolutely vested in the State by forfeiture or otherwise, he could not in this proceeding, to which he was not even a proper party, complain thereof. But if such be the law, he might perhaps institute a chancery suit to set aside the decree, if it had been fraudulently procured, as by a false representation of his title by the person the person claiming to be the owner, or by a fraudulent suppression of what he knew would show, that he was not the owner. It may be, that such chancery suit would lie, as such fraudulent conduct would deprive the owner of the land of substantial rights conferred on him by section 5 of article XIII of the constitution.

It seems to me however, that, if the appellant desires to claim this tract of land, he has only to pay into the Circuit Court of Wyoming, as Randall has done, the amount of the costs, taxes and interest upon the land and have an order entered by the court describing the amount paid in and the character of its claim. But, be this as it may, for the rea-

sons, I have stated, the appellant has no right to complain of this decree or, more properly speaking, order. It follows therefore, that this Court has no jurisdiction to consider any errors, if such there be, committed by the Circuit Court in this proceeding.

The appeal must therefore be dismissed as improvidently awarded.

APPEAL DISMISSED.