# CHARLESTON.

LAWSON, COMMISSIONER OF SCHOOL LANDS *v.* HART, *et al.*

Submitted September 12, 1894.—Decided December 8, 1894.

SCHOOL LANDS—PARTIES—APPEAL.

> The commissioner of School lands is neither a necessary nor proper party to a chancery suit brought in the name of the State

of West Virginia, under section 6, chapter 24, Acts 1893, and there-fore he is not entitled to appeal from the decrees of the Circuit Court in such suit.

L. C. LAWSON in *pro. per.*, cited Const. Art. XIII, s. 5; Acts 1872-73, c. 134, ss. 11, 12, 13; Acts 1882, c. 95, ss. 10, 11, 13, 14; Acts 1887, c. 17, s. 14; Acts 1889-90, c. 12; Acts 1891, c. 94, ss. 13, 16, 17; Acts 1893, c. 24, ss. 12,13, 16; Code, 1886, c. 31, s. 34; Id. c. 105, s. 5; Code, c. 31, s. 39; Id. c. 132, s. 3; 11 Gratt. 55-72; 24 W. Va. 561; 29 W. Va. 633; 38 W. Va. 681, 683.

JOHN BASSELL and M. M. THOMPSON for appellees, cited Acts, 1893, c. 24, ss. 6, 7, 12, 13, 16, 20.

DENT, JUDGE:

On the 21st day of January, 1893, the Circuit Court of Harrison county directed a suit in chancery to be brought and prosecuted by and in the name of the State of West Virginia in accordance with the provision of section 5, chapter 105, Code, to sell, among others, a certain tract of land known as the Browns Mills tract or property, situated in said county.

C. H. Odbert and Thomas L. Ford, as persons claiming ownership of or interest in said land, were made parties defendant to the bill when filed.

Defendant Odbert answered said bill, setting up that he formerly owned said land, and sold it to defendant Ford, but had never made a deed therefor, for the reason that a large part of the purchase-money, to wit, the sum of more than seven hundred dollars remained unpaid; that he was not aware of the forfeiture of said land; and prayed that he might be either permitted to redeem the same, or, if sold, his lien for purchase-money might be preserved and pro-tected.

Thomas L. Ford also filed his petition and answer in said suit, in which he virtually admitted the facts set out in the answer of said Odbert, but attempted to shift the blame of the forfeiture of said land from himself to said Odbert, and prayed to be allowed to redeem the same. Both of said

answers were in the nature of cross bills, and should have been so treated.

The court, for some reason, wholly disregarding the petition to redeem contained in each of said answers, on the coming in of the report of the commissioner in chancery to whom the cause had been referred, directed a sale of said land to pay—First, the costs of suit and expenses of sale; second, fifty nine dollars and thirteen cents taxes and interest due thereon; third, the vendor's lien of C. H. Odbert for unpaid purchase-money due from Thomas L. Ford, amounting to eight hundred and twenty eight dollars and seventy one cents, and the balance, if any, to said Ford.

And on the 8th day of February, 1894, the commissioner having reported a sale of said land at the price one thousand two hundred and seventy dollars, the court, by its decree, distributed the proceeds as follows: First. One half of the costs of the suit, including the half of a special fee of twenty five dollars, and forty one dollars and eighty seven cents commission, to the commissioner; also five dollars for making deed to purchaser. Second. Fifty nine dollars and thirteen cents taxes to the state. Third. Eight hundred and twenty eight dollars and seventy one cents with interest to C. H. Odbert. Fourth. The residue to Thomas L. Ford.

The commissioner, Lewis C. Lawson, not being satisfied with this decree, appeals to this Court for himself, and, as he alleges in his petition, for the state of West Virginia. The errors assigned and relied on in his argument are, first, that he was not ordered to pay the surplus over and above the taxes, interest, and costs into the state treasury for the benefit of the school fund; second, that he was not allowed commission on the sale at the maximum fixed by law, being ten *per centum*.

Under the provisions of section 5, chapter 95, Acts 1882, and section 3, chapter 134, Acts 1872-73, the commissioner of school lands was directed to file his petition in the Circuit Court of the county in which such lands were situated for a sale of such lands. This Court, in the case of *McClure* v. *Maitland*, 24 W. Va. 561, held that such proceedings were in no manner to be regarded a civil suit, but merely *ex parte* pro-

ceedings, adopted by the legislature for the sale of the lands belonging to the state; that they were administrative in their nature, and properly belonged to the legislative branch of the government, and not to the judicial; and, so far as the Circuit Court was called upon to act in such proceedings, it acted as the agent of the legislature, and therefore its orders entered in furtherance thereof were nonjudicial, and could not be reviewed by appeal or writ of error in this Court. *Auvil* v. *Iaeger*, 24 W. Va. 583, was to the same effect. This doctrine was reviewed and approved in the later case of *McClure* v. *Maupeture*, 29 W. Va. 633 (2 S. E. Rep. 761).

To avoid the effect of these decisions, if possible, the legislature provided, in section 5, chapter 94, Acts 1891, and section 5, chapter 105, Code, that "a suit in chancery should be brought and prosecuted by and in the name of the state of West Virginia," in lieu of the old provision by petition in the name of the commissioner of school lands. Under chapter 105 of the Code, this suit was commenced, but it was carried on to final decree under the provisions of chapter 24, Acts 1893, similar, so far as the remedy is concerned, in all respects, to the former law. In section 7, chapter 24, Acts 1893, it is provided: "All suits brought and prosecuted under the provisions of this chapter shall be commenced as provided in chapter 124 of the Code, and proceeded in, heard and determined in the same manner, and in all respects as other suits in chancery are brought, prosecuted and proceeded in, and shall be subject to the same rules of chancery practice as other suits in chancery in the state courts of this state, except as herein otherwise provided." And in section 18: "In every such suit brought under the provisions of this chapter, the court shall have full jurisdiction, power and authority to hear, try and determine all questions of title, possession and boundary which may arise therein, as well as any and all conflicting claims whatever to the real estate in question, arising therein." And in section 20: "Every final decree entered in any such suit shall be a bar to the claim of every person to the real estate, or any part of it, or any lien thereon, or to the proceeds thereof, who has

failed to appear and present his claim thereto as is provided
in the sixth section of this chapter, except as to the excess
of the proceeds of the sale thereof as provided in section .
sixteen of this chapter." Section 16 provides how the
owner, his heirs, personal representatives, or assignees, or
any lien-creditor, may recover the excess referred to in the
twentieth section, which undoubtedly means the excess of
the proceeds not before disposed of by the court. Section 10
provides that the Circuit Court may decree a sale of such
lands as are subject to sale for the benefit of the school fund.
Section 13 makes provision for the disbursement of the pro-
ceeds of lands which have been sold for the benefit of the
school fund. By these provisions the Circuit Court is given
complete equitable jurisdiction of the land in controversy,
and is required to determine what lands can be sold for the
benefit of the school fund.

By the constitution and statutory law, owners and those
holding liens on the forfeited lands have reserved to them
the right to the excess over and above the taxes, interest,
and costs. If such lienors or owners appear in the chan-
cery suit brought to sell such lands before a sale thereof, and
establish their claims, the right of the school fund to par-
ticipate in the proceeds of a sale in so far as they are in ex-
cess of the taxes is completely ousted, and there can no
longer be a sale of such land for the benefit of the school
fund alone. The sale, when ordered in the court, must be
made, not for the benefit of the school fund alone, but for
the taxes due thereon, liens established, and the residue to
the person who has shown himself to be the lawful owner of
the property.

Such is the manner in which the court proceeded and de-
termined this case. It settled all rights and claims with
regard to the property in controversy, and then proceeded to
sell it in accordance with the prayer of the bill and the
answers filed, except that the result of its determination
was to exclude the school fund from any benefit in the pro-
ceeds of the sale in excess of the taxes. This was obviously
in direct accord with the intention of the legislature in
providing for a chancery proceeding in such cases. The

legislature would do no such foolish thing or require the Circuit Court, acting as a court of equity, to do such a foolish thing, as to ascertain who were the lienors and owners of the property, and entitled to the fund in controversy, in control of the court, and then say to them: "The fund is yours. Here it is. You may have it, but the court will just pay it into the state treasury, and you take this order to the auditor, and he will give you an order on the treasurer for it." Such circumlocution is not in accordance with the rules and proceedings of a court of chancery, and never was intended by the legislature.

Therefore the court committed no error in ordering the funds paid directly to the parties entitled to receive the same.

The land not being sold for the benefit of the school fund alone, the state of West Virginia, having received the full amount of taxes and interest due, has no interest in this appeal, and is therefore improperly made a party thereto.

Only parties prejudiced by the decree complained of can appeal therefrom. It is plain from the record and petition that, while the state is nominally a party, this appeal is on behalf of and in the name of Lewis C. Lawson, commissioner of school lands, and, as such, appointed commissioner of sale in this suit. His complaint is that the Circuit Court has not allowed him full commissions on the proceeds of sale as fixed by law. The amount controverted is too small to give this Court jurisdiction; hence the other matter is seized upon as a pretext for that purpose. He is not a party to the suit, either necessary or proper, but is a mere appointee of the Circuit Court, acting as its commissioner to carry out its decrees. If he does not want to obey them, he can resign, and the court can appoint another commissioner in his place.

If a court does not allow a commissioner his commission on sales as the law directs, this does not make him such party to the suit as will allow him to appeal from the court's decrees, but he must seek some other remedy to secure his commissions. He is merely the agent of the court so far as such suit is concerned.

For the foregoing reasons, the appeal in this case is dismissed as improvidently awarded.