# CHARLESTON.

## STARR *v.* SAMPSELLE.

Submitted March 9, 1904—Decided March 29, 1904.

1. SCHOOL COMMISSIONER—*Suits.*

A proceeding instituted and prosecuted by a commissioner of school lands, under chapter 105 of the Code of 1899, for the sale of forfeited lands for the benefit of the school fund, is a judicial proceeding—a suit in chancery—and must be commenced as provided in chapter 124 of the Code, and proceeded in, heard and determined in the same manner, and in all respects as other suits in chancery are brought, prosecuted and proceeded in, and is subject to the same rules of chancery practice as other suits in chancery, except as otherwise provided by said chapter. (p. 448).

2. SCHOOL COMMISSIONER—*Sale of Land.*

Such suit is in the nature of a proceeding against the land itself, and a sale thereunder, when completed, is *prima facie* evidence of the forfeiture of the land against all persons whomsoever. (p. 449).

3. FINAL DECREE—*Jurisdiction.*

If a final decree be made and entered by the circuit court in such proceeding, it having at the time of jurisdiction to make and enter such decree, no error in its proceedings which does not affect its jurisdiction, will render the proceeding void, nor can such error be considered when the decree is collaterally brought in question. (p. 450).

4. SCHOOL COMMISSIONER—*Sale—Redemption.*

> Section 30 of chapter 31 of the Code of 1899, providing for the redemption, by persons under disability, of lands sold by the sheriff for delinquent taxes charged thereon, applies to sales made to individuals, and not to sales made to the State.

Appeal from Circuit Court, Mingo County.

Action by Samuel Starr and others against L. A. Sampselle and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

H. K. SHUMATE, for appellants.

J. B. WILKINSON and L. A. SAMPSELLE, for appellees.

MILLER, JUDGE:

On the 18th day of January, 1887, James Starr, Sr., by his deed of that date, conveyed to his grandsons, Charles Starr, Samuel Starr, Allen Starr and John H. Starr, who were the sons of James Starr, Jr., a certain tract of land, situate in Mingo county, described in the deed as containing two hundred and fifty acres, but which, in fact, contains four hundred and nineteen acres. At the date of the conveyance, each of the said grantees was a minor. In 1892, Charles Starr, died intestate, without issue, leaving said James Starr, Jr., his father, his only heir at law. By his deed, bearing date on the 16th day of February, 1894, said James Starr, Jr., conveyed to his wife, Harriet Starr, a tract of two hundred and fifty acres of land, which the bill alleges to be a conveyance of the interest of said James Starr, Jr., in and to the tract of land first above mentioned. Said James Starr, Jr., died intestate in the year 1895, leaving as his only heirs at law, his sons, Samuel Starr, Allen Starr, and John H. Starr, surviving grantees in the first named deed. The land was returned delinquent for the non-payment of the taxes charged thereon for the year 1890, in the name of Charles Starr and others; and at a sale thereof made by the sheriff of said county in December, 1891, for said delinquent taxes, A. J. Sheppard became the purchaser of the land, which was afterwards-to-wit, on the 3rd day of April, 1893, conveyed to him by deed executed by the clerk of the county court of Mingo county. On the 24th day of April, 1893, said Sheppard, and

his wife, by their deed, conveyed an undivided half interest in
the land to J. B. Ellison; and on the 8th day of August, 1893,
Sheppard and wife, conveyed the other half undivided interest
therein to C. M. Turley, trustee, for the benefit of certain credi-
tors of Sheppard.  By another deed bearing date on the 18th
day of September, 1897, Sheppard and wife conveyed an undi-
vided interest in the tract of land to L. A. Sampselle and Robert
Hoyle.  It does not appear that the land was ever entered on the
land book or charged with the taxes thereon in the name of A.
J. Sheppard, the purchaser at the tax sale, or that he ever paid
any of the taxes charged or chargeable thereon in any name,
for any year.

For the years 1901 and 1902, said land was again returned de-
linquent for the non-payment of taxes charged thereon in the
name of Charles Starr and others, and, at a sale thereof, made
by the sheriff of said county, in the month of November, 1893,
was sold to the State for said last mentioned delinquent taxes.
For the taxes charged thereon for the year 1893, in the name of
Charles Starr and others, the sheriff, in the month of Decem-
ber, 1895, again sold the land to the State.  It does not appear
that the lands were charged with the taxes thereon for any of
the years mentioned, otherwise than in the name of Charles
Starr and others.  The land not having been redeemed from
the sale thereof to Sheppard, or the first sale to the State, in
May, 1895, it was certified to the commissioner of school lands
of said county, as being liable to be sold for the benefit of the
school fund.  Afterwards, the said commissioner caused a suit
to be commenced and prosecuted in the circuit court of said
county in the name of the State of West Virginia for the sale of
that and other tracts of land in said county for the benefit of
the school fund.  To the bill filed in said cause and the proceed-
ings had thereon, "the unknown heirs of James Starr, Jr., de-
ceased," were made parties defendant.  At the May term, 1896,
of said court, said A. J. Sheppard filed his petition in said cause,
setting up title to, and claiming an interest in, said land, by
reason of his purchase thereof at the sheriff's tax sale, and the
conveyance to him by the clerk of the county court as aforesaid,
and praying to be allowed to redeem the same.  To this petition,
said Samuel Starr, Allen Starr and John H. Starr, and also
Roxie Runyon, Samuel, Allen J., John H., Jr., Julia, Florence

and Dicey, alleged children, and Edna Yoke, grandchild, of said
James Starr, Jr., they being his only heirs at law, were made
parties defendant, and answered the said petition by Wells
Goodykoontz, their guardian *ad litem,* duly appointed by the
court.  Said Harriet Starr also appeared and filed her answer
to the said petition, as appears by the record.  Afterwards, such
proceedings were had in the case, upon said petition and
answers thereto, and upon the report of the commissioner, to
whom the cause was referred, that a decree was made permitting
said Sheppard and Harriet Starr to redeem the said land from
the sales to the State, upon the payment of the amount of taxes,
damages, interest and costs due upon said tract of land, to the
State, county and districts, within thirty days from the rising
of the court; and, in default of such payment, the commissioner
of school lands was authorized and directed to sell the land to
the highest bidder.  Sheppard and Harriet Starr, and each of
them, failed to make the payment required of them as aforesaid
for the redemption of said land.  Afterwards, a sale of the land
was made under the decree at which, on the 9th day of January,
1899, said L. A. Sampselle became the purchaser at the price of
$400.00, and there being no exceptions to the sale, the same was
in all respects approved and confirmed by the court.

On the 21st day of March, 1899, said Samuel Starr, Allen
Starr and John H. Starr, instituted their suit in equity in said
circuit court, against said L. A. Sampselle, A. J. Sheppard, J.
B. Ellison, Harriet Starr and others, the said Samuel Starr
having, as he alleges, attained his majority within one year next
before that date, and said cause, as to said Allen and John H.
Starr, infants, being prosecuted in their names by Samuel Starr
as their next friend.

The plaintiffs, in their bill, allege the facts substantially as
hereinbefore stated, and further aver that Samuel Starr, Allen
Starr and John H. Starr, are each the owners of one undivided
fourth of said tract of land; that said Harriet Starr owns the
other undivided fourth thereof, and also claims, in addition
thereto, a cne-half interest in the land purchased by her of de-
fendant J. B. Ellison.  They then charge that the said tax sale
and tax deed to A. J. Sheppard were and are void, and passed
no title of the land to Sheppard because of various alleged irreg-
ularities in the list of delinquent taxes for which the land was

sold, and in the proceedings of the sheriff, preceding said sale, all of which questions have been passed upon by this Court in different causes, in which irregularities similar to those so pointed out, have been held to be cured by the provisions of chapter 31 of the Code. The plaintiffs claim that, if the tax sale to Sheppard had been entirely regular, they would still have the right to redeem the land, because, at the time said land was returned delinquent and at the time the deed therefor was made by the clerk to Sheppard, they were each under twenty-one years of age; that said Allen and John H. are still minors, and that Samuel has become twenty-one years of age within one year next preceding the institution of their suit; but they do not allege that they, or either of them, have taken any steps whatever under section 30 of chapter 31 of the Code for the redemption of said land from the purchase thereof by Sheppard as aforesaid. They also point out irregularities in the delinquent list and proceedings, relating to the taxes charged on said land and returned delinquent for the years 1891, 1892 and 1893, for which it was sold to the State as aforesaid, all of which alleged defects fall within the curative provisions of the statute as is hereinafter shown. They then pray that the deed for said land made by the clerk of the county court of Mingo County to A. J. Sheppard be set aside and held for naught, as well as the deeds from Sheppard and wife to Ellison, and Turley, trustee, respectively; that the proceedings had by the State for the sale of the land for the benefit of the school fund be declared irregular, void and of no binding effect upon plaintiffs; that the sale to Sampselle thereunder be set aside and vacated; and that plaintiffs may be declared the owners of said land, and allowend to redeem the same from any forfeiture thereof, and for general relief. Defendant Sampselle filed his demurrer and answer to the bill. In his answer he admits many of the allegations of the bill, but avers therein that at the time of the institution of the suit by the State for the sale of said tract of land for the benefit of the school fund as aforesaid, the State had a lien thereon, paramount and superior to all others; that the court had jurisdiction to enforce the same in a proper suit for the purpose; that there is no error in said suit prejudicial to the rights of plaintiffs; that the title to said land vested in respondent, by virtue of the sale to him and confirmation thereof, as aforesaid; that im-

mediately after the confirmation of said sale, respondent entered upon, and took possession of, said tract of land, and was, at the time of institution of said suit and now is in the actual, open, notorious, exclusive and adverse possession thereof; and that plaintiffs did not pay any of the taxes on said land in any name for any of the years mentioned. Upon the final hearing of said cause, at its September term, 1902, the court dismissed the plaintiffs' bill at the costs of said Samuel Starr and from this decree, the plaintiffs, Samuel Starr in his own right, and Allen Starr and John H. Starr, by Samuel Starr, their next friend, were allowed an appeal.

The bill, stripped of its unnecessary recitals and averments, may be treated as a bill by the plaintiffs therein for the redemption by them of the land sold by the State under the proceedings aforesaid to Sampselle, for the benefit of the school fund.

Appellants say that, should there not appear sufficient defects in the proceedings to avoid the tax sales, made by the sheriff, as aforesaid to Sheppard, and to the State, the infant defendants would still have the right by their guardian or next friend, to redeem the land, and cite section 30 of chapter 31 of the Code which says: "Any infant, married woman, or insane person, whose real estate may have been so sold during such disability, may redeem the same by paying to the purchaser, his heirs or assigns, within one year after the removal of the disability, the amount for which the same was sold, with the necessary charges incurred by the purchaser, his heirs or assigns, in obtaining the title under the sale, and such additional taxes on the estate, as may have been paid by the purchaser, his heirs or assigns, and interest on the said items at the rate of six *per centum* per annum from the time the same were paid. If any such person own an undivided interest in the real estate so sold, he may redeem such interest in like manner, and within the same time, by paying such proportion of the purchase money, charges, taxes and interest, as his interest in the premises is to the whole tract or part sold; but he shall not have the right to redeem more than his own undivided interest." This section refers to sales made to individuals and not to sales made to the State. The sales made to the State, upon which the school fund proceeding was and is predicated, were for the taxes charged upon said land for the years 1891, 1892 and 1893. In that proceeding, appellants

filed no petition asking permission to redeem the land. Section
17 of chapter 105 of the Code provides that: "The former own-
er, his heirs, devisees or assigns, of any real estate forfeited for
any cause to the State of West Virginia, may at any time during
the pendency of the suit for the sale thereof, and before a decree
for the confirmation thereof has been made and entered by the
court, file his petition therein in manner and form as provided
in the next preceding section in relation·to the excess of the pro-
ceeds of such sale, praying to be allowed to redeem so much only
of such real estate as to which the title still remains in the
State; and upon the filing of such petition, and upon such proof
being made as would entitle the petitioner to the excess of the
purchase money of said real estate if the same had been sold, the
court may, by a proper decree, permit the petitioner upon the
payment into court or to the commissioner of school lands, the
costs, taxes and interest properly chargeable thereon, to be fixed
by the court in its decree, to redeem the real estate mentioned in
his petition." There is no saving in this statute as to persons
under disability. Unless there is an express saving in the stat-
ute of limitations, no person will come within its exceptions, and
the prescribed limitations will operate against persons under
disabilities as well as others. *Jones* v. *Lemon*, 26 W. Va. 629;
Wood on Lim. section 252; Angel on Lim. sections 194, 476. It
follows therefore that appellants had and have no right to re-
deem the land under the last cited section upon the ground of
infancy alone. Appellants' suit is a collateral attack upon the
school land proceeding. In *Wiant* v. *Hayes, Com'r.* 38 W. Va.
681, it is held that a proceeding under chapter 105 of the Code of
1887, now chapter 105 of the Code of 1899, by a commissioner
of school lands for the sale of forfeited lands is a judicial pro-
ceeding, a suit, not simply an administrative proceeding. The
court may, in it, allow one claiming right to the surplus of its
sale to file his petition asking such surplus to be paid to him.
*Hayes, Com'r,* v. *Camden's Heirs,* 38 W. Va. 109; *Lawson* v.
*Hart,* 40 W. Va. 52; *Moore* v. *McNutt,* 41 W. Va. 695; *Yokum*
v. *Snyder,* 42 W. Va. 357; *King* v. *Mullens,* 171 U. S. 404.
Section 7 of chapter 105 of the Code of 1899, provides that:
"All suits brought and prosecuted under the provisions of this
chapter, shall be commenced as provided in chapter one hun-
dred and twenty-four of the Code, and proceeded in, heard and
determined in the same manner, and in all respects as other

suits in chancery are brought, prosecuted and proceeded in, and
shall be subject to the same rules of chancery practice as other
suits in chancery in the state courts of this State, except as
herein otherwise provided."

Section 10 authorizes the circuit court to decree a sale of such
lands as are subject to sale for the benefit of the school fund.
Section 18 declares that: "In every such suit brought under the
provisions of this chapter, the court shall have full jurisdiction,
power and authority to hear, try and determine all questions of
title, possession and boundary which may arise therein, as well
as any and all conflicting claims whatever to the real estate in
question arising therein." Section 20 reads thus: "Every final
decree entered in any such suit shall be a bar to the claim of
every person to the real estate, or any part of it or any lien
thereof, or to the proceeds thereof, who has failed to appear and
present his claim thereto as is provided in the sixth section of
this chapter, except as to the excess of the proceeds of the sale
thereof, as provided in section sixteen of this chapter. And ex-
cept as provided by the last clause of section seventeen of this
chapter."

By these provisions, the circuit court is given complete equit-
able jurisdiction of the land in controversy, and is required to
determine what lands can be sold for the benefit of the school
fund. *Lawson* v. *Hart,* 40 W. Va. 56.

In *Coal Co.* v. *Howell,* 36 W. Va. 489, it is held that: "Such
proceeding is a judicial one, in the nature of a proceeding
against the land itself; and, when completed by a sale, is
*prima facie* evidence of such forfeiture against all persons.
* * * The policy of these laws was to quiet titles as far as
possible, and to convey a good title under these sales as far as
the commonwealth had the means of doing." On page 501 of
that case, the Court says: "It is manifest, from the whole
scope and tenor of the acts on the subject, that the regularity of
the sale of forfeited lands under the decree of the court was
never intended to be drawn in question in any collateral pro-
ceeding."

From a final decree entered in such suit, parties may ap-
peal as in other cases. In the school land proceeding in ques-
tion the court had jurisdiction of the subject matter. All the
parties in interest were before the court, "the unknown heirs
of James Starr, Jr.," being defendants in the main suit; and to

the said petition of A. J. Sheppard, filed therein, the said Samuel, Allen and John H. Starr were made defendants, and filed their answer thereto by their guardian *ad litem*. Harriet Starr, as the record recites appeared and also filed her answer to said petition. Thus, the court had jurisdiction not only of the subject matter, but also of the parties in interest. The record shows that the cause was heard upon the answer of the infant defendants by their guardian *ad litem*. The decree of sale made therein, and under which Sampselle purchased the land and claims title thereto, is not void. If erroneous, any part in interest has his remedy by bill of review or appeal, as in other causes in equity. In *Wandling* v. *Straw*, 25 W. Va. 692, it is held that the validity of a judgment of a court of record cannot be collaterally attacked, on the ground that the court had no jurisdiction, unless the want of jurisdiction appears on the face of the record. The Court, on page 700, says: "If a court of general jurisdiction had jurisdiction to render the judgment which it did render, no error in its proceedings which did not affect its jurisdiction will render the proceeding void, nor can such errors be considered when the judgment is collaterally brought in question." See cases therein cited. 1 Black on Judg. section 270.

In one of the two causes of the *State* v. *McEldowney*, decided at the present term, it is held that "no defect in a sheriff's affidavit to a list of sales of land for taxes will invalidate a tax deed made under chapter 31 of the Code of 1899. *Phillips* v. *Minear*, 40 W. Va. 58, and *McClain* v. *Batton*, 50 W. Va. 121, so far as they hold to the contrary, are overruled. In the other, it is held that the failure to return a list of delinquent lands sold for taxes by the first Monday in June is not, under chapter 31, section 25, of the Code of 1899, ground for setting aside a sale, either to the State or an individual. The defect is cured by that section. Expressions to the contrary in *McGee* v. *Sampselle*, 47 W. Va. 352, disapproved.

The curative provisions as to tax sales in section 25 of chapter 31 of the Code of 1899 apply to a purchase by the State of land sold for taxes. Point 3 of the syllabus in *McGee* v. *Sampselle*, 47 W. Va. 352, to the contrary, is overruled."

There appears to be no error in the decree complained of. It must therefore be affirmed.

*Affirmed.*