# CHARLESTON.

### CHARLES WAGNER *et als* v. A. D. BEAVERS.

Submitted February 25, 1920.   Decided March 2, 1920.

1. TAXATION—*Recital of Sheriff's Return of Sale as to Quantity of Land Prevails Over Receipt Issued to Purchaser.*

    Where the return of sales of lands sold for the taxes delinquent thereon made by a sheriff shows that a fractional part of a certain town lot was sold for the taxes charged against the whole of such lot, and purchased by a particular individual, and the sheriff issues a receipt to such purchaser showing that he purchased the whole of said lot for the taxes so delinquent thereon, such purchaser will not be entitled to a deed for any larger interest than that shown to have been sold to him by the sheriff's return of sales. The recitals of this return will prevail over the statements of the receipt issued to the purchaser. (p. 634).

2.   SAME—*Effect of Tax Deed for Larger Interest Than That Sold Stated.*

Where the clerk of the county court makes a deed to a tax purchaser for a larger interest than that shown by the sheriff's return of delinquent sales to have been purchased by him in a town or city lot, such deed will be held to be a cloud upon the title to the extent that it attempts to convey anything in excess of the onterest shown to have been purchased by the sheriff's report of sales, but will be held to be valid as to such interest.   (p. 635).

POFFENBARGER, JUDGE, (*dissenting*).

Appeal from Circuit Court, Wyoming County.

Action by Charles Wagner and others against A. D. Beavers. Decree for defendant, and plaintiffs appeal.

*Reversed and rendered.*

*Cook & Howard,* for appellants.

RITZ, JUDGE:

Plaintiffs became the owners of lot No. 3 in the town of Bramblett in Wyoming County, in the year 1915.  Prior to the conveyance to them the lot was entered upon the land books for the year 1915 in the name of their vendor, and the taxes thereon charged against the same in his name.  These taxes were not paid and the sheriff returned the lot delinquent for the non-payment thereof, and the lot was subsequently offered for sale in satisfaction of the taxes charged against it, at which sale the defendant, according to the sheriff's return of sales, purchased one-fourth of the lot for the taxes and charges and, according to the receipt given him by the sheriff, purchased the whole thereof for such taxes and charges.  The lot was not redeemed within the time required by law, and upon application of the defendant the clerk of the county court made a deed to him conveying the whole lot.  Alleging many irregularities in the tax sale, and also alleging that only one-fourth of the lot was purchased by the defendant for the taxes, and exhibiting a certified copy of the sheriff's return of sale as evidence of this fact, the plaintiffs brought this suit to cancel said tax deed.  The defendant by his answer denied all of the allegations of the bill except the allegation that the sheriff's

return of sales showed that he only purchased one-fourth of the lot, but as to this allegation he alleged that he had in fact purchased the whole lot, and exhibited the receipt issued to him by the sheriff as evidence of this fact. The case was submitted upon this state of the record, and the circuit court dismissed the plaintiff's bill. It will be noticed that the only question involved is whether the receipt issued by the sheriff to the purchaser or the return of sales made by the sheriff to the county clerk will control in making the deed. If the return made by the sheriff to the county clerk's office controls, then the county clerk improperly made a deed for more than one-fourth of the lot. If, on the other hand, the receipt issued by the sheriff to the purchaser is the paper which controls, the deed made by the clerk is proper. Under our statute the sheriff making a tax sale gives to the purchaser a receipt showing the land sold, in whose name it is sold, the amount paid therefor, and the interest purchased therein, together with certain other information. This receipt is not recorded, and is not in any sense, under the statute, a muniment of title, but is simply a memorandum in the possession of the purchaser showing the transaction had by him with the sheriff. The law does, however, require the sheriff to make a report of the sales so made by him to the clerk of the county court. This report he must make under oath, and it must contain among other information the description of the land sold, the party in whose name sold, the name of the purchaser, and the interest purchased. This report is required to be recorded, and is a muniment of title of the tax purchaser. The object of this report is to perpetuate the facts showing the transaction, to enable the owner of the land to learn from the record the fact that his land has been sold, and to whom, and to guide the officer entrusted with the power in the execution and delivery of a conveyance to the purchaser. From this return the owner or any other person interested is always enabled, by going to the office of the county clerk, to ascertain with certainty the evidence of the sale, and to protect his interest in the premises by redemption; and the officer entrusted with the power of making conveyances is enabled to ascertain the description of the land, the name of the

purchaser, the quantity sold, and every other thing which the law requires to be stated in the deed. It is argued that the receipt given to the purchaser is a paper of superior dignity, for the reason that both parties are represented in its execution, while the sheriff's return of sales is an *ex parte* document. We do not think the faith and credit to be given to these papers is to be thus determined, but rather is their status to be fixed by the purpose which they are intended to accomplish. As before seen, the purpose of this report of the sheriff is to give notice to the owner and any other person interested of just what has been done. The owner, upon going to the record and finding that only a part of his land has been sold for taxes, may prefer to let the purchase stand rather than redeem, or it may be that one having a lien on the land, upon going to the record and seeing that only one-fourth of it has been sold, and knowing that three-fourths of it is ample security for his debt, would fail to redeem, and then if the receipt issued by the sheriff to the purchaser, of which no one else has knowledge, is to control over this report the creditor, thus misled, would be deprived entirely of his security, as well as the right to redeem by the lapse of time. In the State of Iowa it seems that there is a statute somewhat similar to ours in regard to issuing a receipt to the purchaser at a tax sale, as well as a requirement of a report being made and recorded. Under this statute it is held that such report will control when it is in conflict with the receipt given by the selling officer. *McCready* v. *Sexton and Son,* 29 Iowa 356; *Henderson* v. *Oliver,* 32 Iowa 512; *Clark* v. *Thompson,* 37 Iowa 536. There are some holdings in Minnesota to the 'effect that the certificate issued by the selling officer to the purchaser will control over a report made by the selling officer, but that is for the reason that under the statute in that state this certificate is the purchaser's muniment of title. It becomes his deed if the land is not redeemed within the time given the owner to do so, and it is recorded and treated in all respects as a deed conveying the title without the execution of any other paper, and the statute in express terms makes it *prima facie* evidence of what it contains, so that it cannot be said that these cases are pertinent authority upon the question involved here.

We are of opinion in this case that the report of sale made

by the sheriff must control as to the interest sold by him, and that the purchaser was not entitled to a deed for any larger interest than that shown to have been purchased by the report of sales. Section 25 of chapter 31 of the Code provides that a deed conveying a less amount than that shown to have been purchased will not be void, but does not provide that a deed may convey a larger interest than is so shown to have been purchased.

But can it be said that the deed is absolutely void as contended for by the plaintiffs? It is insisted that under the decision in the case of *Shrewsbury* v. *Horse Creek Coal Land Company*, 78 W. Va. 182, this deed is absolutely void, and of no effect to pass any title whatsoever to the purchaser. We do not think that case is authority for the proposition contended for. In that case the sheriff undertook to sell an undivided interest in land which it has been repeatedly held was a void sale, and then after the sheriff had sold this undivided interest the purchaser undertook to divide the land between himself and the other joint owner and take a deed for the part laid off to himself. It was held in that case that the sale and the deed made under it were void. In this case the sale is not questioned. The only defect is the imperfect execution by the clerk of the power conferred on him to make a deed. Instead of making a deed for a one-fourth undivided interest in this town lot as he was authorized by law to make, his deed attempted to convey the whole thereof. This act was unauthorized so far as it went beyond the conveyance of the interest purported to have been sold, but can it be said that it is any more than an illegal and defective performance by the clerk of the duty imposed upon him which is cured by the provision of § 25 of ch. 31 of the Code? We are of opinion that this imperfect execution by the clerk of the county court of the power conferred upon him, so far as it affects the interest purported to have been sold, is cured, and that the deed is good to pass the one-fourth undivided interest.

Our conclusion, therefore, is to reverse the decree of the circuit court of Wyoming County and enter a decree here cancelling the tax deed to the extent that it attempts to convey a

larger interest than a one-fourth undivided of the lot referred
to, as a cloud upon the title of the plaintiffs thereto.

*Reversed and rendered.*

POFFENBARGER, JUDGE, *(dissenting)*:

I am unable to concur in this decision.  The turning point
is conflict between the list of sales and the memorandum of sale
executed by the sheriff and delivered to the purchaser, the
former having been made by the sheriff, presumptively in the
absence of the purchaser and after all the sales had been com-
pleted, and the latter, presumptively at the time of the par-
ticular sale in question and in the presence of the purchaser;
the giving of the receipt being an *inter partes* act and the mak-
ing of the report, an *ex parte* act.

In the Iowa cases referred to in the opinion prepared by
Judge RITZ and adopted by my associates, the statute required
the certificates given to the purchasers, to be made from the rec-
ord of the sales filed, and not at the time of the sale.  The report
or list of sales was first made up and recorded or filed for
record and then the receipt or certificate was made from and
based upon that report or record.  The receipt or certificate
was required by express terms of the statute to conform to the
record, whether the latter was right or wrong.  Under our
statute, the receipt is not based upon the list of sales nor made
after the filing thereof.  It is an original paper and antedates
the preparation and filing of the list of sales.  In Minnesota,
the order of procedure and relation in point of time between
the delivery of the certificate to the purchaser and the making
of the record, are the same as they are under ours, and, there,
the certificate is regarded as the better or superior evidence and
hence allowed to prevail over the record, in instances of conflict.
*McQuade* v. *Jeffray*, 47 Minn. 326.

In my opinion, the difference between the legal status of
the purchaser's certificate, under the Minnesota statute, and
the receipt provided for by ours, does not afford any good
ground of escape from the effect of the precedent found in the
decision above cited.  Our receipt is a formal, statutory one
which the selling officer is bound to give and for which the

purchaser pays a fee. It contains the same columns and provides for the same data that the list of sales is required to have, in so far as it pertains to the tract of land embraced in it. While it does not convey title, it is evidence of the purchaser's right. It constitutes in part the basis of right to obtain a deed for the land mentioned in it. From it is to be ascertained the date of the expiration of right in the former owner to redeem, by express provision of the statute. The form of deed prescribed recites expiration of such right "as appears by the sheriff's receipt for the purchase money." Code, ch. 31, sec. 19. By virtue of sec. 15 of that chapter it is made determinative of the amount of the purchase money and the date from which to calculate interest thereon, in the event of a redemption. Though not rising to the dignity of a Minnesota certificate in all respects, it confers absolute and substantial right respecting both the land and the purchase money, and it is an *inter partes* paper embodying the evidence of a transaction between two persons, as does the Minnesota certificate. Nowhere in the statute is the list of sales declared to be *prima facie* correct, nor does the prescribed form of deed refer to it any way. The higher character of the receipt is shown by the two instances in which it is expressly adopted as being true. Moreover, every receipt is by the common law deemed to be *prima facie* correct, and the burden rests upon him who denies its correctness to overthrow it by proof. This is more than a mere receipt for money. It is a statutory memorandum of a sale of land, amounting to a contract authorized by law. While it does not pass title, it is a contract having the same dignity and sanctity as other contracts. Regarded as a contract, it is just as sacred and entitled to just as much respect, as the Minnesota certificate. Again, there is no intimation of any imperfection or mistake in any receipt. Nowhere is there a provision curing defects in it. But the statute does assume probability of errors and omissions in the *ex parte* list of sales. Section 25 of the chapter says: "No irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county court * * * shall, after the deed is made, invalidate or effect the deed or sale."

The statutory preference of the receipt over the list of sales,

in the two instances noted, does not argue lack of intent to make it prevail in others, under the rule *Expressio unius est exclusio alterius*. In giving it such effect in these two instances, the list of sales is not mentioned. The preference is effected only by necessary implication. Nothing is said of the relative rank and dignity of the two papers anywhere in the statute. It merely deals with and recognizes the receipt as the superior evidence in the two subsequent transactions contemplated, redemption and the making of a deed in default of redemption. Recognition of its superiority in these two instances argues legislative impression or assumption of general superiority, or intent to confer it. And that impression, assumption or intent agrees with the general principle of law that a contract between two men, solemnly made, stands upon higher ground, in any controversy between them, respecting its subject matter, than the subsequent conduct of one of them in the absence of the other, by which their relative rights in the subject matter may be affected. Acts of public officers are presumed to be right, but the presumption is rebuttable. An unimpeached contract between two men is right as matter of law, not as a matter of mere rebuttable presumption, even though one of them acts as a public officer and the other in his private capacity.

That the receipt is evidence of a contract made by the sheriff acting for the state or some other principal, there can be no doubt. The statute denominates the transaction a sale, and a sale always involves a contract. Money is paid by the purchaser in exchange for which he receives a paper signed by the sheriff and giving him conditional right to call for a deed which the statute makes *prima facie* evidence of good title against the former owner and persons claiming under him and conclusive evidence thereof against other persons. That paper, when produced, proves a conditional sale of certain land. That there is a point in the proceeding at which a sale is effected, the statute necessarily implies. At what point can that take place? Obviously at the exchange of the money for the memorandum of sale. The purchaser's bid initiates the transaction, and it is completed by delivery of the memorandum. All that precedes and follows is *ex parte*. Now, the statute says: "No sale or deed of any such real estate under the provisions of this chapter

shall be set aside, or in any manner affected by reason of the failure of any officer mentioned in this chapter to do or perform any act or duty herein required to be done or performed by him after such sale is made, or by the illegal or defective performance, or attempt at the performance, of any such act or duty after such sale." Code, ch. 31, sec. 25. This statute has been enforced agreeably to its letter. *State* v. *McEldowney,* 55 W. Va. 1; *Starr* v. *Sampselle,* 55 W. Va. 442, 450. The sale having been completed by delivery of the signed memorandum, the making out of the list of sales is an act or duty required by the sheriff, "After such sale is made," and the statute says total failure to perform it shall not invalidate the deed still later made.

Reference to the history of tax-deed legislation proves legislative purpose neither to make the deed depend upon the list of sales nor to make it conform thereto. Sec. 19 of ch. 31, Code of 1868, did require such conformity, saying the deed should recite "All the material circumstances appearing in his (the recorder's) office in relation to the sale." In *Jones* v. *Dils,* 18 W. Va. 756, a deed conveying a less quantity of land than was shown by the list of sales to have been purchased, was set aside in 1881. At the next session of the Legislature, the requirement of that recital was struck out of the statute, by an amendment and has never appeared therein since. Acts 1882, ch. 130, sec. 19. At the same time, sec. 25 was so amended as to prevent the setting aside of deeds on the ground of the decision in *Jones* v. *Dils.* At the same time, sec. 19 was so amended as to require the deed to recite the receipt or memorandum of purchase, instead of the list of sales. And, again, sec. 25 was then amended by insertion of the broad curative provision above quoted, inhibiting the setting aside of any sale or deed, for any omission or error on the part of any officer, after sale was made.

In view of the superiority thus given to the receipt or memorandum of purchase, I do not see how it can be held that, in case of a discrepancy, the list of sales can be permitted to prevail over it. The deed would be good, if there were no list of sales at all. How can a list shown by the contract to be erroneous be permitted to invalidate it?