# CHARLESTON.

## WILSON *et al. v.* MAXON *et al.*

Submitted June 3, 1904. Decided November 15, 1904.

1. RECISSION OF CONTRACT—*Proof of Fraud.*
   To rescind an executed contract in equity on the grounds of fraud, such fraud must be clearly alleged and fully sustained by proof if denied. (p. 199).

2.　OUTSTANDING TITLE—*Burden of Proof.*

A litigant relying on the outstanding title of a third person to sustain his action or defense must fully establish such title by competent and sufficient proof. (p. 199).

3.　RESCISSION OF VERBAL CONTRACT—*Remedy at Law.*

A verbal contract for the exchange of personal property may be rescinded by either party thereto for good cause and a suit at law maintained for the restitution of the property. (p. 199).

4.　RESCISSION OF VERBAL CONTRACT—*Remedy in Equity.*

In such cases, resort should not be had to a court of equity, unless for some special reason the remedy at law is unavailing or inadequate. (p. 199).

Appeal from Circuit Court, Cabell County.

Bill by John T. Wilson and D. J. Jenkins against Elizabeth Maxon and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

MARCUM, MARCUM & SHEPPARD, SIMMS & ENSLOW, and M. V. PHILLIPS, for appellants.

VINSON & THOMPSON, for appellees.

DENT, JUDGE:

John T. Wilson and D. J. Jenkins instituted a suit in chancery, in the circuit court of Cabell county, against Elizabeth Maxon, as administratrix and widow and Oscar Maxon and Mrs. M. D. Phillips as children and heirs at law of Thomas Maxon, deceased, including therein the husband of Mrs. M. D. Phillips, for the purpose of rescinding and cancelling the sale of a certain removable house situated by permission on Ninth street, in the city of Huntington and which the plaintiffs, on the 23d day of September, 1896, by verbal contract sold to Thomas Maxon, now deceased, for five shares of paid up stock of the par value of five hundred dollars, in the Maxon-Miller Company. Such proceedings were had in said suit that on the 9th day of July, 1901, the circuit court entered a decree cancelling such sale, restoring the possession of such house to the plaintiffs and awarding costs against the defendants from which the defendants appealed.

There was no demurrer to the bill, yet on the hearing the cause should have been dismissed as to all the defendants being heirs of Thomas Maxon, deceased, with the exception of the administratrix, as the suit only involved the right of possession of a movable house. 22 American and English Enc. of Law (2nd Ed.) 748.

The personal estate of Thomas Maxon, deceased, alone, was called in question and the full title thereto was invested in his administratrix, and his widow and heirs had no legal interest in the controversy. So they were improperly made parties to the suit and adjudged to pay the costs thereof.

To sustain this suit for possession of this house against the administratrix, the sole ground is that the deceased had obtained possession thereof by fraudulent representation as to the owner-' ship of the patent on which the issue of the stock transferred to the plaintiff was based. The allegations of the bill in relation thereto are as follows, towit:

"Plaintiff further says that there were issued to said Thomas Maxon in his life time certain letters patent for a lifting jacks, bearing numbers and dates as follows: No. 292441, dated January 22, 1884; No. 298306, dated May 6, 1884; No. 298307, dated May 6, 1884; No. 306341, dated October 7, 1884; No. 306340, dated October 7, 1884; No. 312878, dated February 24, 1885; No. 315807, dated April 14, 1885. That afterwards, the date of which is unknown to your complaint, said Thomas Maxon in his lifetime transferred and assigned to one James W. Carpenter, of Dayton, Ohio, an undivided one-half interest in and to said letters patent; that afterwards, towit, on the 26th day of January, 1887, said Thomas Maxon in his lifetime and James W. Carpenter transferred and assigned unto D. E. McSherry & Company of Dayton, Ohio, all their rights, title and interest in and to said patents and all improvements then made, together with all improvements and patents thereafter to be gotten or owned in whole or in part by either the said Maxon or said Carpenter to manufacture, use and sell in the United States of America and its territories all such lifting jacks, which said transfer was recorded and registered in the Patent Office of the United States, as required by law. Plaintiffs further say that on or about the 28th day of August, 1894, said Thomas Maxon in his lifetime secured from the United States Letters Patent for an im--

proved lifting jack, which patent is number 525223, and that afterwards, the date of which is unknown to your complainant said Thomas Maxon in his lifetime transferred to one George A. Miller of Dayton, Ohio, an undivided half interest in said patent improved lifting jack; and that afterwards, on or about the —— day of September, 1895, a corporation known as the Maxon-Miller Company was organized in Huntington, West Virginia, by said Maxon and Miller along with others for the manufacture of the improved lifting jack, and that afterwards, towit, on the 9th day of September, 1895, the said Thomas Maxon in his lifetime and George A. Miller pretended to convey to the Maxon-Miller Company the exclusive right to manufacture, use and sell in the United States of America and its territories lifting jacks under the letters patent above recited. That in exchange therefor the said Maxon-Miller Company was to give to the said Thomas Maxon certain paid up shares of stock in the Maxon-Miller Company, and did issue and deliver to him said shares. The plaintiffs further say that the said Thos. Maxon was the President and General Manager of said Company, and its affairs from the time of its organization until the time of his death in January, 1900. Plaintiffs further say that they were the owners of a certain office building situated on the East side of Ninth street, between Fourth and Fifth Avenues in the City of Huntington, being the same building now occupied by Peyton and Perkins as a law office, on the property belonging to the City of Huntington; that by their agreement with the city they were to have the use of said ground for a yearly ground rental for $—— per year, with the privilege of removing said building whenever they wished so to do. That on or about the 23d day of September, 1896, the said Thomas Maxon, in his lifetime, came to them seeking to buy said building and to give them in exchange therefor stock in the Maxon-Miller Company, which said stock he represented to them as being worth the par value thereof, or $100 per share, and that the said Company had the sole and exclusive right to manufacture said lifting jacks in the United States and that said plaintiffs relying on said statements, did deliver to said Maxon in his lifetime the possession of the building above described, and that in exchange therefor the said Maxon in his lifetime delivered to them five shares of

stock in the Maxon-Miller Company of the pretended value of $100 each. The plaintiffs further say that afterwards, the date of which is unknown to your complainant, the Maxon-Miller Company was notified by the D. E. McSherry & Company, of Dayton, Ohio, or its assignee, of the former transfer of the letters patent and were prohibited and stopped from manufacturing said lifting jacks; and that afterwards, towit, on the —— day of ——, 1900, said Company having failed of its purpose, by reason of the failure of the title of the patent sold to it, was 'forced to abandon the manufacture of said lifting jacks and to have a receiver appointed to wind up its affairs."

The defendants in their answer positively deny these allegations of the bill in so far as they allege the non-ownership of the Maxon-Miller Company of the patent involved and attack the right of Thomas Maxon to transfer the same to such Company and they further deny that D. E. McSherry & Company, or its assignee, ever laid any claim to such patent or ever stopped the manufacture of such lifting jacks by the Maxon-Miller Company, during the lifetime or since the death of Thomas Maxon, deceased.

There is an agreed statement of facts in the record. This does not cover the true ownership of the patent involved nor is it admitted that the Maxon-Miller Company was prevented either during the lifetime or after the death of Thomas Maxon, deceased, from operating fully and completely under the patent involved and the plaintiffs are wholly without proof to sustain such latter allegations.

It is true that the McSherry Manufacturing Contract of the 27th day of January, 1887, includes all improvements on such lifting jacks for which patent might be thereafter obtained by Thomas Maxon. As such patents had no potential existence at the time of the contract, the sale or transfer therefor is void at law while equity will regard the same as an executory contract enforceable or not in the sound discretion of a court of conscience if not contrary to public policy and the several rights of the parties as they appear. Such an executory contract may be rescinded by the verbal agreement of the parties thereto. Proof of abandonement is sufficient evidence of the existence of such agreement unless the contrary is shown. 24 Am. & Eng. Enc. Law (2nd Ed.) 1042; 9 Cyc., 524; *Hugills* v. *Cabell*,

9 W. Va. 522; *Bank* v. *Kimbelands,* 16 W. Va. 535. To sustain their case to the satisfaction of a court of equity, it devolves upon the plaintiffs to show that D. E. McSherry and Company are still claiming under and have fully complied with all the important provisions of the contract or that their legal assignee has so done and is continuing to so do. On these important questions, neither the allegations or proof come up to the requirements of a court of equity. There is no allegation that D. E. McSherry & Co. or their assignee have fully complied with their manufacturing contract or that they are still complying with it and regard it as enforceable. Nor is there any proof or admission that such is the case. On the contrary, as appears from the circumstances, they had abandoned it long before the death of Thomas Maxon. At least they never attempted to enforce it against him during his lifetime and now that he is dead they must make out a very clear case to have it enforced. It is admitted that neither they nor their assignee have tried to so do. The plaintiffs can take no advantage of stale and abandoned rights. Hence their allegations and proof wholly fail to make out a case of fraud against Thomas Maxon, deceased, calling for the interference of a court of equity. The allegations and proof are insufficient to overthrow the title of the Maxon-Miller Company to the patent involved and as this is really the only foundation for the charge of fraud or the want of consideration, the bill should have been dismissed. Not only is this true but the plaintiffs, if showing a good case for relief, have a good and adequate remedy at law. So far as rescission is concerned, they could have accomplished this by their own act and then sued for the possession of the house at law. 24 Am. and Eng. Enc. of Law, 643; *Id.* 614. There were no writings between the parties but the contract was a verbal exchange of personal property, which might be rescinded by either party for just cause and a suit at law maintained for restitution of property.

Why then encumber a court of equity with a such a suit, the only object of which is to try the right to the possession of personal property? The legal remedy is adequate and complete. *Id.* 617.

Decree reversed and suit dismissed.

*Reversed.*